[No. S086220. July 9, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
JOE BUCKHALTER, Defendant and Appellant.

## COUNSEL

Richard B. Lennon, under appointment by the Supreme Court; and Peter Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Lance E. Winters and Susan Kim, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BAXTER, J.**—We confront a narrow issue, which has nonetheless produced conflict in the Courts of Appeal, concerning the trial court's duty to calculate custody credits upon a sentencing remand. Defendant, a career criminal, was convicted in 1996 of multiple felonies committed on a single occasion. The court sentenced him to three consecutive indeterminate life terms under the "Three Strikes" law (Pen. Code, §§ 667, 1170.12).[1] He was committed to prison, and was delivered into the custody of the Director of Corrections (Director) to begin service of the sentence.

Subsequently, the Court of Appeal remanded on sentencing issues only. It directed the trial court to stay two of the three life sentences and to determine whether to impose certain additional enhancements. At some point, defendant was transported from prison to county jail to permit his participation in the remand proceedings. On remand, defendant again received an indeterminate life term as a third strike offender, the court imposed the additional enhancements, and defendant was redelivered to prison. The sentencing court awarded defendant the custody credits, including jail work and conduct credits (hereafter good behavior credits), that he had earned up to the time he was originally sentenced. However, the court refused to recalculate the credit total. The court rejected defendant's theory that his more recent local confinement while he awaited the remand hearing

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

was also jail detention "prior to the imposition of sentence" (§ 4019, subd. (a)(4)), and that he was thus entitled to additional good behavior credits available to persons in such presentence status. (*Ibid.*; see also § 2900.5, subd. (a).)

Defendant appealed, raising, among other issues, the denial of additional presentence credits. The Court of Appeal upheld the trial court's refusal to recalculate credits, ordered minor modification of the judgment in another respect, and otherwise affirmed. For its conclusion that a trial court need not recalculate presentence custody credits upon a sentencing remand, the Court of Appeal relied upon its own prior decision in *People v. Myers* (1999) 69 Cal.App.4th 305 [81 Cal.Rptr.2d 564] (*Myers*) and expressly disagreed with the contrary holding of *People v. Thornburg* (1998) 65 Cal.App.4th 1173 [77 Cal.Rptr.2d 288] (*Thornburg*).

We granted review limited to the issue whether "a trial court must recalculate custody and conduct credits following remand for resentencing." We conclude as follows: When, as here, an appellate remand results in modification of a felony sentence during the term of imprisonment, the trial court must calculate the *actual time* the defendant has already served and credit that time against the "subsequent sentence." (§ 2900.1.) On the other hand, a convicted felon once sentenced, committed, and delivered to prison is not restored to presentence status, for purposes of the sentence-credit statutes, by virtue of a limited appellate remand for correction of sentencing errors. Instead, he remains "imprisoned" (§ 2901) in the custody of the Director "until duly released according to law" (*ibid.*), even while temporarily confined away from prison to permit his appearance in the remand proceedings. Thus, he cannot earn good behavior credits under the formula specifically applicable to persons detained in a local facility, or under equivalent circumstances elsewhere, "prior to the imposition of sentence" for a felony. (§ 4019, subds. (a)(4), (b), (c), (e), (f); see fn. 6, *post.*) Instead, any credits beyond *actual custody time* may be earned, if at all, only under the so-called worktime system separately applicable to convicted felons serving their sentences in prison. (§§ 2930 et seq., 2933.) Defendant is serving an indeterminate term of 25 years to life under the Three Strikes law, consecutive to a determinate term of five years. Under the Three Strikes law, however, he is not eligible to earn prison worktime credits against the indeterminate portion of his sentence.

While the Court of Appeal correctly held defendant was not entitled to additional good behavior credits as a presentence detainee, it erred insofar as it concluded that the trial court need not recalculate and credit the *actual time* defendant had served on his sentence prior to the modification. We will

therefore reverse the judgment of the Court of Appeal and will remand for proceedings consistent with the views expressed herein.

## FACTS

Around 1:00 p.m. on May 24, 1994, for the second time in a week, students at a dental school saw defendant wandering in a cubicle area. Defendant was wearing a white lab coat. Two other students discovered that their wallets, containing cash totaling between $60 and $70, were missing from the area. Later the same day, defendant was seen near the school's loading dock, wearing a white T-shirt and gray jeans. When confronted, defendant ran. School police detained and searched him. He had $69 on his person.

A jury convicted defendant of second degree commercial burglary (§ 459) and two felony counts of petty theft with a prior (§§ 484, 666). The jury also found that defendant had four prior violent or serious felony convictions within the meaning of the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (b), (c)) and five prior felony convictions for which defendant had served separate prison terms (§ 667.5, subd. (b)).[2]

On July 30, 1996, the trial court sentenced defendant to third strike terms of 25 years to life for each of the three current felony convictions, and made the sentences consecutive, resulting in a total sentence of 75 years to life. At the sentencing hearing, held 40 days after our decision in *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628] (*Romero*), the court acknowledged its discretion to dismiss prior strikes but expressly declined defendant's request that it do so. The court credited defendant with 1,195 days of presentence custody, consisting of 797 actual days of presentence jail confinement and 398 additional days of presentence good behavior credit. Defendant was committed to state prison.

Defendant appealed, raising only sentencing issues, including certain technical challenges to his prior strikes.[3] The People raised additional sentencing arguments. In a 1997 decision, the Court of Appeal rejected both parties' contentions except in two respects.

The Court of Appeal agreed with defendant that the Three Strikes law did not require consecutive life terms for the 1996 burglary and theft convictions

---

[2]As recited by the trial court at the sentence remand hearing on October 9, 1998, the prior strikes found by the jury were two first degree residential burglary convictions dated April 23, 1994, a voluntary manslaughter conviction dated March 26, 1992, and a first degree residential burglary conviction dated April 23, 1984.

[3]On this subject, defendant urged that the timing of his prior violent or serious felonies rendered them ineligible as strikes, and that two of these priors, both burglaries, were ineligible because they were not brought and tried separately.

arising from a single incident, and, indeed, that section 654 prevented multiple punishment for these crimes. Thus, the Court of Appeal held, the two life sentences for theft must be stayed pending service of the similar sentence for burglary.

On the other hand, the appellate court agreed with the People that under section 667.5, subdivision (b), the sentencing court was *required* to impose a consecutive one-year enhancement for each prior separate prison term found by the jury unless the court exercised its discretion to dismiss the enhancements and explained on the record the mitigating circumstances that motivated that sentencing choice (see § 1170.1, former subd. (h)).[4] Defendant's sentencing was incomplete, said the Court of Appeal, because, so far as the record disclosed, the trial court had done neither.

The Court of Appeal disposed of the appeal as follows: "The case is remanded to the trial court which is ordered to exercise its discretion with respect to its findings that appellant suffered five prior felony convictions [resulting in separate prison terms] within the meaning of section 667.5, subdivision (b). The trial court is ordered to stay imposition of sentence on counts 2 and 3 [the theft convictions], said stay to become permanent upon completion of the term in count 1 [the burglary conviction]. In all other respects, the judgment is affirmed." The Court of Appeal's decision was filed on October 14, 1997, and its remittitur issued on December 19, 1997.

Even in advance of the remittitur, the trial court attempted, in defendant's absence, to comply with the Court of Appeal's directions on remand. In a November 1997 minute order, the court purported to amend the July 30, 1996, judgment by staying two of the three life sentences previously imposed, but adding consecutive one-year enhancements for each of four prior prison terms. Defendant then sought a writ of habeas corpus from the Court of Appeal, protesting the trial court's attempt to sentence him in absentia and without counsel. When the Court of Appeal noticed its intention to grant relief in the first instance, the trial court relented and scheduled a full

---

[4]Former subdivision (h) of section 1170.1 specified that "[n]otwithstanding any other law, the court may strike the additional punishment for the enhancements provided in . . . [s]ection[] . . . 667.5 . . . , if it determines that there are circumstances in mitigation of the additional punishment and states on the record its reasons for striking the additional punishment." (Stats. 1994, ch. 1188, § 12.7, p. 7202.) Former subdivision (h) was repealed by section 3 of chapter 750 of the 1997 Statutes and Amendments to the Codes. Section 9 of the same chapter declared that "[i]n repealing subdivision (h) of [s]ection 1170.1, . . . it is not the intent of the Legislature to alter the existing authority and discretion of the court to strike those enhancements or to strike the additional punishment for those enhancements pursuant to [s]ection 1385, except insofar as that authority is limited by other provisions of law." (Stats. 1997, ch. 750, § 9.) No party argues here that former subdivision (h) is inapplicable to defendant's case.

sentencing hearing. At some point, defendant was transported from prison to county jail to facilitate his participation in the remand proceedings.

After many continuances and extensive briefing by both defendant and his standby counsel, the remand hearing took place on October 9, 1998, before Judge West, who had previously sentenced defendant in 1996. The trial court stated it had read or reread the parties' prehearing briefs and motions, the 1996 probation report, a supplemental probation report dated September 25, 1998, and letters submitted by various individuals on defendant's behalf.

Defendant was permitted to represent himself. He asserted the Court of Appeal had ordered "an appropriate and full resentencing." He urged at length, as in his prehearing briefs, that all but one of his prior strikes should be dismissed, and that he should be resentenced accordingly. In response, the court stressed the limited scope of the remand order. The court noted that most of defendant's challenges to his prior strikes had already been finally resolved, either before the original sentencing or on appeal. Given the limited purpose of the remand, the court explained, these challenges could not now support a motion to dismiss prior strikes.

The court "acknowledge[d]" it had "discretion to sentence" defendant and thus perhaps could dismiss prior strikes as an act of leniency. However, the court declined to do so. The court explained, as it had in 1996, that defendant's long and serious criminal career called for his treatment as a Three Strikes offender. The court therefore announced it would sentence defendant to a Three Strikes term of 25 years to life on count 1 (burglary), impose similar sentences on counts 2 and 3 (petty theft), and (pursuant to § 654, as directed by the Court of Appeal) stay the latter sentences, such stay to become permanent upon defendant's completion of the term for count 1.

Next, the court addressed the other issue remanded by the Court of Appeal, i.e., whether to impose enhancements for the prior prison terms found by the jury. The court concluded that there were no facts in mitigation, and that each of the five prior prison terms fully justified a one-year consecutive enhancement of the base sentence, for a total additional term of five years.

Finally, the court considered the matter of credits against the sentence imposed. The court advised defendant that while he retained his 1,195 days of custody and good behavior credits earned in county jail prior to his original sentencing, the court was not obliged to award additional time and good behavior credits for his confinement pending the remand hearing, even for the five months he had been physically housed in the county jail, rather

than prison, while awaiting the hearing. The court explained that wherever confined during this period, defendant had been under the jurisdiction of the Department of Corrections, which was thus responsible for calculating and applying all credits that had accrued in the interim. In response to defendant's inquiry, the court specifically indicated that during this intervening period, defendant was subject to what the court described as the 15 percent limit on worktime credits for persons serving Three Strikes prison terms, rather than the more liberal good behavior formula for persons confined locally prior to sentencing.

An abstract of judgment was issued, reflecting a Three Strikes indeterminate term of 25 years to life, an additional five-year term on the prior enhancements, and presentence credits, as before, of 1,195 days. Defendant again appealed. The Court of Appeal appointed Peter J. Dodd to represent him. Defendant's sole argument related to sentence credits. Defendant contended that while actually housed *in county jail* pending the remand hearing, he was entitled to good behavior credits under section 4019, which, by its terms, makes such credits available to certain felony defendants detained in specified city or county facilities prior to sentencing. Hence, he urged, the trial court should have calculated his county jail time pending the remand, applied section 4019 good behavior credits to that period, and reflected the total in the new abstract of judgment.

The People opposed this contention and also argued that the abstract of judgment should be corrected to reflect the trial court's imposition of a $200 restitution fine under section 1202.4. Further, the People urged, the abstract should further assess a parole revocation fine in the same amount, as required by section 1202.45.

In a unanimous unpublished opinion, filed January 27, 2000, the Court of Appeal, Second Appellate District, Division Four rejected defendant's argument that he was entitled to additional section 4019 credits to be calculated by the sentencing court. Applying its own prior decision in *Myers, supra,* 69 Cal.App.4th 305, and disagreeing with the contrary holding of *Thornburg, supra,* 65 Cal.App.4th 1173, the Court of Appeal concluded that, wherever housed during the remand, defendant remained in the constructive custody of the Department of Corrections under his previously imposed sentence. Thus, the Court of Appeal held, he was not eligible for custody and good behavior credits available under section 4019 to those "confined in a county jail . . . following arrest and *prior to the imposition of sentence* for a felony conviction." (*Id.,* subd. (a)(4), italics added.) The Court of Appeal corrected the abstract of judgment to reflect the $200 restitution fine, declined, on ex post facto grounds, to add the parole revocation fine, and otherwise affirmed the judgment.

Defendant filed a self-written petition for review, raising multiple issues. His appellate counsel filed a separate petition for review, urging we resolve the conflict between *Myers* and *Thornburg*. Our order granting review limited the issue to "whether a trial court must recalculate custody and conduct credits following remand for resentencing." We examine that issue.

## DISCUSSION

Defendant, now represented by the California Appellate Project, makes a broader argument here than in the Court of Appeal, but with the same apparent object. Before us, defendant urges that, as a result of the 1997 remand, his original 1996 sentence was vacated in all respects, and his status became as though he had never been sentenced. Therefore, he reasons, *all* his time in custody until the 1998 resentencing was *presentence* custody. He insists the trial court should thus have awarded him all actual-time and good behavior credit available to a presentence detainee and reflected the total in the new abstract of judgment.

The People respond that in 1996 defendant received, and began to serve, an indeterminate life term under the Three Strikes law, and that the limited remand proceedings never altered that aspect of his sentence. Accordingly, they argue that during all the intervening time, and even while defendant was temporarily moved from prison to jail to permit his participation in the proceedings on remand, he continued to serve his Three Strikes term in the actual or constructive custody of the Director. Any sentence credit defendant has earned in this status, the People insist, is solely under rules applicable to prison confinement, and is a matter for the Director, not the trial court, to determine.

In this court, the parties scarcely hint how defendant's total days of credit for this period might differ if the period is characterized as presentence time. But defendant's aim here seems similar to that which he explicitly pursued below. As we hereafter explain, persons detained prior to trial and sentencing on felony charges may be able to earn conduct-based credits under a formula more favorable than that which applies to state prisoners serving Three Strikes terms. It appears defendant seeks the benefit of the presentence formula for some or all of his time in confinement before the remand hearing was completed in October 1998.[5]

■ When considering the issue presented, we must admonish at the outset that application of the complex statutory sentence-credit system to

---

[5]As the text of our opinion explains, defendant's brief on the merits in this court contends that, by voiding the original sentence *ab initio*, an appellate sentencing remand restores the defendant to *presentence status* and thereby invokes the trial court's responsibility, under section 2900.5, to recalculate intervening credits accordingly. The clear implication is that the

individual situations " 'is likely to produce some incongruous results and arguable unfairness when compared to a theoretical state of perfect and equal justice. [Because] there is no simple or universal formula to solve all presentence credit issues, our aim [must be] to provide . . . a construction [of the statutory scheme] which is faithful to its language, which produces fair and reasonable results in a majority of cases, and which can be readily understood and applied by trial courts.' " (*People v. Bruner* (1995) 9 Cal.4th 1178, 1195 [40 Cal.Rptr.2d 534, 892 P.2d 1277], quoting *In re Joyner* (1989) 48 Cal.3d 487, 495 [256 Cal.Rptr. 785, 769 P.2d 967].)

 With this caveat in mind, we are persuaded that neither defendant's nor the People's arguments are entirely correct. On the one hand, we agree with defendant that when a prison term already in progress is modified as the result of an appellate sentence remand, the sentencing court must recalculate and credit against the modified sentence *all actual time* the defendant has already served, whether in jail or prison, and whether before or since he was originally committed and delivered to prison custody.

On the other hand, we accept the People's premise that a convicted felon who has once been sentenced, committed, and delivered to prison, who received all credits for confinement prior to the original sentencing, and who remains behind bars pending an appellate remand solely for correction of sentencing errors, is not eligible to earn additional credits for good behavior as a presentence detainee. Neither the language nor the purposes of the credit laws oblige the trial court, on remand, to award good behavior credits applicable only to custody which precedes any sentence, commitment, and delivery to prison.

On the contrary, once a convicted felon has been so sentenced, committed, and delivered, he remains, pending a remand solely on sentencing issues, a

---

court must apply the laws pertaining to *presentence* credits when engaging in this recalculation. At oral argument, however, defendant's counsel altered and narrowed his theory. Counsel insisted that he was arguing only about *who* should calculate the intervening credits, not about what formulas should apply, and that his claim did not depend on whether confinement pending a sentence remand was considered presentence time. Counsel urged only that because a sentencing remand brings a defendant before the trial court in any event, it is most practical and fair to give the court, rather than the Department of Corrections, the responsibility to calculate all intervening time and conduct credits, wherever and however accrued.

We reject counsel's apparent belated effort to avoid any ruling by this court on what credit formulas should apply when the case is remanded for recalculation of credits (see discussion *post*). At all stages below, and in his briefs here, defendant has explicitly or implicitly sought the benefit of the presentence credit statutes, or has assumed he is eligible for such credits upon a sentencing remand. As appears from our text discussion, the issue of defendant's eligibility for credits is inextricably intertwined with the question of who should calculate them. We proceed to address those issues in tandem.

prisoner in the custody of the Director under the original commitment, even during periods when he is temporarily housed away from state prison to permit his participation in the remand proceedings. Hence, the inmate's accrual of term-shortening sentence credits can arise only under laws and rules specifically applicable to prisoners in the Director's custody.

To explain these conclusions, we begin with an overview of the felony sentencing system, including the separate and independent credit schemes for presentence and postsentence custody. Everyone sentenced to prison for criminal conduct is entitled to credit against his term for all actual days of confinement solely attributable to the same conduct. (§§ 2900, subd. (c), 2900.1, 2900.5, subds. (a), (b); see *Bruner, supra,* 9 Cal.4th 1178, 1180.) Persons detained in a specified city or county facility, or under equivalent circumstances elsewhere (see fn. 6, *post*), "prior to the imposition of sentence" may also be eligible for good behavior credits of up to two additional days for every four of actual custody. (§ 4019, subds. (a)(4), (b), (c), (e), (f).)[6] One such additional day is awarded unless the detainee refused to satisfactorily perform assigned labor, and a second such additional day is awarded unless the detainee failed to comply with reasonable rules and regulations. (§ 4019, subds. (b), (c), (f).) "[T]he court imposing a sentence" has responsibility to calculate the exact number of days the defendant has been in custody "prior to sentencing," add applicable good behavior credits earned pursuant to section 4019, and reflect the total in the abstract of judgment. (§ 2900.5, subd. (d); see also *id.,* subd. (a).)

A judgment of imprisonment must direct that the defendant be delivered to the Director's custody at a designated state prison. (§ 1202a.) Upon receipt of a certified abstract of the judgment, the sheriff must deliver the defendant to prison authorities. (§ 1216.) Once so delivered, the defendant "shall be imprisoned until duly released according to law." (§ 2901.) Service of the sentence commences upon such delivery (§ 2900, subd. (a)), and time thereafter served in an institution designated by the Director "shall be

---

[6]Section 4019 provides that its formula for good behavior credit applies to persons detained, prior to felony sentencing, in specifically enumerated *local facilities*, including "*county* jail[s], industrial farm[s], or road camp[s] or . . . *city* jail[s], industrial farm[s], or road camp[s]." (*Id.,* subd. (a)(4), italics added.) The statute does not apply to presentence time spent receiving treatment "in [such] nonpenal institutions . . . as state hospitals." (*People v. Sage* (1980) 26 Cal.3d 498, 502-503 [165 Cal.Rptr. 280, 611 P.2d 874] (*Sage*)). However, it has been held that equal protection requires application of section 4019 credits to presentence confinement in a state facility if the circumstances of the confinement are essentially penal. (See *People v. Guzman* (1995) 40 Cal.App.4th 691, 693-695 [47 Cal.Rptr.2d 53] [person diverted, prior to sentencing, for treatment at California Rehabilitation Center (CRC), but later excluded from CRC as unsuitable, is entitled to § 4019 credits while thereafter still confined at CRC pending sentencing]; see also *People v. Nubla* (1999) 74 Cal.App.4th 719, 731 [88 Cal.Rptr.2d 265].)

credited as service of the term of imprisonment" (*id.*, subd. (c)). The agency to which the defendant is committed, not the trial court, has the responsibility to calculate and apply any custody credits that have accrued between the imposition of sentence and physical delivery of the defendant to the agency. (§ 2900.5, subd. (e).)

Once a person begins serving his prison sentence, he is governed by an entirely distinct and exclusive scheme for earning credits to shorten the period of incarceration. Such credits can be earned, if at all, only for time served "in the custody of the Director" (§ 2933, subd. (a)) and pursuant to article 2.5 of chapter 7 of title 1 of part 3 of the Penal Code (commencing with section 2930) (hereafter article 2.5). Under article 2.5, eligible prisoners may shorten their determinate terms, or the minimum confinement for certain indeterminate sentences, by up to six months for every six months actually served by performing, or making themselves available for participation, in work, training or education programs established by the Director. (§ 2933.) Such prison worktime credits, once earned, may be forfeited for prison disciplinary violations and, in some cases, restored after a period of good behavior. (§§ 2932, 2933, subds. (b), (c).) Accrual, forfeiture, and restoration of prison worktime credits are pursuant to procedures established and administered by the Director. (§§ 2932, subd. (c), 2933, subd. (c).)

By its own terms, article 2.5 applies only to persons sentenced under section 1170, the Determinate Sentencing Act. (§§ 2930, subd. (a), 2933, subd. (a); see *In re Cervera* (2001) 24 Cal.4th 1073, 1078 [103 Cal.Rptr.2d 762, 16 P.3d 176] (*Cervera*).) However, certain other statutes expressly extend the benefits of article 2.5 to the particular *indeterminate* sentences imposed thereunder. (E.g., §§ 217.1, subd. (b) [15 years to life for attempted murder of public official], 667.51, subd. (d) [15 years to life for recidivist sex offense], 667.61, subd. (j) [15 or 25 years to life for serious sex offense with aggravating circumstances or prior convictions], 667.7, subd. (a)(1) [20 years to life for felony involving great bodily injury by habitual offender], 667.71, subd. (b) [25 years to life for habitual sexual offender], 667.75 [17 years to life for certain habitual drug offenders].)

In still other cases, statutes specifically *prohibit or limit* prison worktime credits under article 2.5 (i.e., § 2933), and presentence good behavior credits under section 4019, depending upon the crime for which the person is convicted, or the sentence ultimately imposed. One convicted of a "violent felony" as described in section 667.5, subdivision (c), including a felony itself punishable by death or life in prison (*id.*, subd. (c)(7)), can receive no more than 15 percent prison worktime credits under 2933, cannot earn good behavior credits under section 4019 exceeding 15 percent of the actual time

of confinement in a local facility "prior to placement in the custody of the Director," and cannot apply prison worktime credits against any minimum eligible parole date for an indeterminate sentence. (§ 2933.1, subds. (a)-(c).) One convicted of murder may not earn either section 4019 or section 2933 credits. (§§ 190, subd. (e), 2933.2, subds. (a), (c).) Certain other violent recidivists, and persons convicted of willful and premeditated attempted murder, are ineligible for prison worktime credits under section 2933 (§§ 664, subd. (f), 2933.5).

Notable here is that one serving a sentence under the Three Strikes law cannot earn prison worktime credits under section 2933 exceeding one-fifth of his total sentence. (§§ 667, subd. (c)(5), 1170.12, subd. (a)(5).) Moreover, while the Three Strikes law thus specifically limits the prison worktime credits that may be earned under article 2.5, it provides no exception to the general statutory rule that article 2.5 applies only to those sentenced under the Determinate Sentencing Act. (See discussion, *ante*.) Hence, one, like defendant, who has suffered *two or more* prior strikes, is not eligible to earn prison worktime credits against the *indeterminate life term* mandated by the Three Strikes law. (*Cervera, supra*, 24 Cal.4th 1073, 1080.)

We recently held that restrictions on the rights of Three Strikes prisoners to earn term-shortening credits do not apply to confinement in a local facility prior to sentencing. We emphasized that when limiting the credit rights of offenders sentenced thereunder, the Three Strikes law (§§ 667, subd. (c)(5), 1170.12, subd. (a)(5)) expressly refers only to "*post*sentence . . . credits," i.e., those " 'awarded pursuant to [a]rticle 2.5' " (*People v. Thomas* (1999) 21 Cal.4th 1122, 1125 [90 Cal.Rptr.2d 642, 988 P.2d 563], italics in original), and "does not address *presentence* . . . credits" for Three Strikes defendants (*ibid.*, italics added).

The sentence-credit statutes make only one express reference to a sentence modified while in progress. Section 2900.1 provides simply that "[w]here a defendant has served *any portion of his sentence* under a commitment based upon a judgment which judgment is subsequently declared invalid or which is modified *during the term of imprisonment, such time* shall be credited upon any subsequent sentence he may receive upon a new commitment for the same criminal act or acts." (Italics added.)

The sentence-credit statutes do not define the phrases "prior to sentencing" (§ 2900.5, subd. (d)) and "prior to the imposition of sentence" (§ 4019, subd. (a)(4)), nor do they expressly exclude the possibility that time in custody pending a sentence remand might be presentence time. Nonetheless,

it appears clear in context that the quoted language refers to confinement prior to the time the defendant *was originally sentenced and placed in the custody of the Director to commence service of his term.* The statutory scheme, read as a whole, plainly contemplates that once sentenced, committed to prison, and delivered to the Director's custody, a felon remains in that status, serving a term of imprisonment, until lawfully released, and earns credits against the sentence, if at all, only pursuant to the laws specifically applicable to persons serving terms in prison. (But see fn. 10, *post.*)

In particular, we note the manner in which the credit statutes treat modification of a sentence already commenced, as distinct from presentence detention. On the one hand, section 2900.5 provides that when the defendant "has been in custody" (*id.*, subd. (a)) "prior to sentencing" (*id.*, subd. (d)), the trial court must calculate and award, in the abstract of judgment (*ibid.*), "all [such] days of custody, . . . *including days credited to the period of confinement pursuant to [s]ection 4019*" (*id.*, subd. (a), italics added). On the other hand, section 2900.1 provides that when, after the defendant has already been committed and begun to serve his sentence, the judgment is modified "during the term of imprisonment," "such time" already served must be credited against the subsequent sentence.

Section 2900.1 thus speaks in terms of a prison sentence already in progress, and, in contrast with section 2900.5, it omits reference to presentence good behavior credits under section 4019. The implication is that once the defendant is committed to prison, his custody is thereafter considered service of his sentence, and a remand with respect to a sentence the defendant is already serving does not render him eligible for credits of the presentence kind.

Hence, we conclude, an appellate remand solely for correction of a sentence already in progress does not remove a prisoner from the Director's custody or restore the prisoner to presentence status as contemplated by section 4019. Clearly defendant is not entitled to section 4019 credits for his time in a state penitentiary. Nor could he earn them during the time he was physically housed in *county jail* to permit his participation in the remand proceedings. Section 4019 does allow such credits for presentence custody in specified city or county facilities. (*Id.*, subd. (a)(4).) But defendant's temporary removal from state prison to county jail as a consequence of the remand did not transform him from a state prisoner to a local presentence detainee. When a state prisoner is temporarily away from prison to permit court appearances, he remains in the constructive custody of prison authorities and continues to earn sentence credit, if any, in that status. (See *Bruner, supra,* 9 Cal.4th 1178, 1183; *In re Rojas* (1979) 23 Cal.3d 152, 155 [151 Cal.Rptr.

649, 588 P.2d 789].) Prison regulations specify how persons otherwise entitled to earn prison worktime credits under article 2.5 are to accrue such credits while "[r]emoved to out-to-court status." (Cal. Code Regs., tit. 15, § 3045.3, subds. (a), (b)(7).)

It follows that all of defendant's confinement between July 1996 and October 1998 was imprisonment in the Director's custody, and such custody counts not as presentence confinement, but as service of his sentence. (§ 2900.1.) Of course, the indeterminate life term is not subject to article 2.5 worktime credits that would shorten his 25-year minimum term of confinement. (See § 3046, subd. (a)(2); *Cervera, supra,* 24 Cal.4th 1073, 1077-1082.)

Against this reasoning, defendant argues at length that the necessary effect of an appellate remand to correct an unlawful or erroneous sentence is to vacate the original sentence, require full resentencing with attendant rights, and thus restore the defendant to the same position as if he had never been sentenced at all. (See, e.g., *Van Velzer v. Superior Court* (1984) 152 Cal.App.3d 742, 744 [199 Cal.Rptr. 695].) In legal effect, defendant thus suggests, he was serving no sentence in the Director's custody, but was confined "prior to the imposition of sentence" (§ 4019, subd. (a)(4)), and entitled to credits available in that status, until his valid sentence was imposed in October 1998.

However, we recently rejected the notion that an appellate remand that requires the exercise or reexercise of sentencing discretion necessarily results in a full resentencing. In *People v. Rodriguez* (1998) 17 Cal.4th 253 [70 Cal.Rptr.2d 334, 949 P.2d 31] (*Rodriguez*), the issue was whether the defendant has constitutional and statutory rights to be personally present with counsel (see Cal. Const., art. I, § 15 [defendant's right to presence with counsel at critical stage of prosecution]; Pen. Code, § 1193, subd. (a) [defendant's right to be present when judgment pronounced]; see also U.S. Const., 6th and 14th Amends.) at trial court proceedings to decide, pursuant to an appellate remand under *Romero, supra,* 13 Cal.4th 497, whether prior strikes should be dismissed in furtherance of justice.

We ultimately concluded that the defendant should have the right to be present even if the trial court decided *not* to disturb its prior Three Strikes sentence by dismissing one or more strikes. But our narrow reasoning was instructive on the status of a sentence that has become the subject of an appellate remand. We declined to rest our holding upon the defendant's contention that his unwaived absence from such a remand proceeding would necessarily violate his constitutional rights "to be present with counsel *at*

*sentencing and pronouncement of judgment,* a critical stage of the criminal prosecution." (*Rodriguez, supra,* 17 Cal.4th 253, 257, italics added.) Indeed, we explained, the premise underlying this argument—i.e., that a sentencing *remand* necessarily entails a full *resentencing*—was not correct.

On the contrary, we noted that section 1260, which sets out the permissible dispositions of a criminal appeal, permits the reviewing court to " 'remand the cause to the trial court for such further proceedings *as may be just under the circumstances.*' " (*Rodriguez, supra,* 17 Cal.4th 253, 258, italics added.) Thus, we reasoned, "[W]e may assume that a reviewing court has the power, when a trial court has made a mistake in sentencing, to remand with directions that do not inevitably require all of the procedural steps involved in arraignment for judgment and sentencing. . . . We have exercised this power, for example, by directing a trial court to determine an unresolved factual issue affecting eligibility for probation, when the court had erroneously assumed the defendant was not eligible. [Citation.] Thus, it appears we may properly remand to permit the trial court to make the threshhold determination of whether to exercise its discretion in defendant's favor without necessarily requiring resentencing unless the court does act favorably." (*Ibid.*)

Under *section 1260 itself,* we concluded, it was "just under the circumstances" to require the defendant's presence with counsel on remand, even if the trial court ultimately decided against alteration of its earlier Three Strikes sentence, in order to allow the defendant to advance any arguments for the favorable exercise of the court's discretion. (*Rodriguez, supra,* 17 Cal.4th 253, 258-260.) We instructed that, on remand, the trial court "should conduct a hearing in the presence of defendant, his counsel, and the People to determine whether to dismiss one or more prior felony conviction findings . . . . If the court decides to dismiss one or more findings, the court should proceed to resentence defendant. If the court decides not to dismiss a finding, *the court should remand defendant to the custody of the Department of Corrections to serve the remainder of his term.*" (*Id.,* at p. 260, italics added.)

*Rodriguez* thus negated the theory that a limited appellate sentence remand pursuant to section 1260 itself vacates the original sentence. Indeed, we plainly indicated that if, on remand, the trial court decided not to exercise its discretion to modify the original sentence, *that sentence would remain in effect,* and the defendant *need not be resentenced* but should be remanded to *continue serving the term previously imposed.* The implication is that the original sentence remained in effect, and continued to govern the

defendant's custody, unless and until it was disturbed as a result of the remand proceedings.

Here, of course, the trial court did stay two of three life sentences, as the Court of Appeal had directed, and did exercise its discretion to impose additional enhancements. Accordingly, the court proceeded to resentence defendant. But this fact alone cannot mean that the original sentence became void *ab initio*, rendering defendant retroactively eligible to receive presentence credit under section 4019 for his intervening time in custody. In other words, defendant's entitlement to presentence credits for custody prior to disposition of a sentencing remand cannot depend solely on whether, in the end, his sentence was modified. On the contrary, as we have seen, when a sentence is modified while in progress, the statutes provide that defendant's confinement under the original commitment should simply be credited as partial service of the sentence ultimately imposed.

Our conclusions comport with the distinct purposes of the pre- and postsentence systems for awarding term-shortening credits. Before 1982, section 4019 provided good behavior credits for certain city and county jail detainees, including *misdemeanants* in jail custody both before and after conviction and sentencing (*id.*, subd. (a)(1)-(3)), but did not expressly allow such credits to persons detained in jail on *felony* charges before being convicted and sentenced. In *Sage, supra*, 26 Cal.3d 498, we held that this discrepancy in the presentence jail treatment of misdemeanants and felons violated equal protection. (*Id.*, at pp. 506-509.) The *Sage* ruling was later codified by the addition of subdivision (a)(4) to section 4019. (Stats. 1982, ch. 1234, § 7, p. 4553.) But the concerns of *Sage* are not implicated by the treatment of convicted felons, already committed to the custody of the Director, whose cases are later remanded for the correction of sentencing error while their terms are in progress.

Moreover, the pre- and postsentence credit systems serve disparate goals and target persons who are not similarly situated. The presentence credit scheme, section 4019, focuses primarily on encouraging minimal cooperation and good behavior by persons temporarily detained in local custody before they are convicted, sentenced, and committed on felony charges. By contrast, the worktime credit scheme for persons serving prison terms emphasizes penological considerations, including the extent to which certain classes of prisoners, but not others, deserve or might benefit from incentives to shorten their terms through participation in rehabilitative work, education, and training programs operated by the Department of Corrections. (See, e.g., *Guzman, supra*, 40 Cal.App.4th 691, 695; *People v. Applin* (1995) 40

Cal.App.4th 404, 411 [46 Cal.Rptr.2d 862]; *People v. Heard* (1993) 18 Cal.App.4th 1025, 1030-1031 [22 Cal.Rptr.2d 684].)[7]

These aims are best served by concluding that state prisoners whose sentences have been remanded for reconsideration while in progress are not presentence detainees eligible for credits under section 4019. When, prior to such a remand, one has served a portion of his or her original sentence in the Director's custody, such incarceration should be subject solely to the prison worktime credit rules applicable to the sentence he ultimately receives.

We do agree with defendant that the trial court, having modified defendant's sentence on remand, was obliged, in its new abstract of judgment, to credit him with all *actual* days he had spent in custody, whether in jail or prison, up to that time. As we have seen, the court's duty in this respect arose from section 2900.1, which specifies that when a sentence is modified while in progress, the "time" already served "shall be credited upon any subsequent sentence [the defendant] may receive upon a new commitment for the same criminal act or acts."

The conclusions we reach vary somewhat from the evolving prior case law, which itself is in conflict on significant issues. The pertinent authorities begin with *People v. Chew* (1985) 172 Cal.App.3d 45 [217 Cal.Rptr. 805] (*Chew*). In *Chew*, the defendant was originally sentenced and delivered to prison, where he thereafter remained, serving the term imposed. On his "partially successful" first appeal (*id.*, at p. 47), the case was remanded for resentencing.[8] The defendant was "once again sentenced to . . . the term of three years and eight months." (*Ibid.*) The trial court awarded 301 days of sentence credit for the prior prison time, including 201 days of actual confinement and 100 days of good behavior credit *under the two-for-four presentence formula described in section 4019.*

The defendant again appealed, urging, among other things, that his intervening time in the state penitentiary should have been credited *not* with the good behavior credits provided by section 4019 for presentence detainees in local facilities, but instead with prison worktime credits under the one-for-one formula set forth in section 2933. The People agreed that the defendant,

---

[7]Of course, the need for incentives to good behavior in local confinement does not warrant a conclusion that everyone detained in a local facility is entitled to section 4019 credits against a related prison term. The Legislature itself has determined that certain classes of local presentence detainees—including some whose offenses suggest a propensity for serious violence—are barred or severely restricted from earning presentence good behavior credits under section 4019. (§§ 2933.1, subd. (c) [specified violent felony; 15 percent limit], 2933.2, subd. (c) [murder; no credit available].)

[8]The court's opinion in *Chew, supra,* 172 Cal.App.3d 45, 47, does not indicate in what respect the defendant's first appeal was "partially successful," nor does it set forth the basis on which the defendant's sentence had been remanded for reconsideration.

who had remained in prison confinement, was ultimately entitled to prison worktime credits. The sole argument raised by the People was that the accrual and award of such prison credits, insofar as actually earned, were not the province of the trial court but the administrative responsibility of the Department of Corrections.

With no significant analysis, the *Chew* court first held that "the time spent in prison between the initial sentencing and resentencing or a new sentence is properly characterized as *presentence* time." (*Chew, supra,* 172 Cal.App.3d 45, 47, fn. omitted, italics added.) The court also agreed with both parties that, while confined *in prison* awaiting resentencing, the defendant could accrue *article 2.5 prison worktime credits* against the sentence ultimately imposed. However, the court accepted the People's view that it was for the Department of Corrections, not the ·trial court, to determine what worktime credits the defendant had accumulated under applicable prison rules. Finally, in dictum, the court declared that time spent in a *county jail* pending a sentencing remand is also subject to presentence good behavior credits under section 4019, and that the award of such credits is the trial court's responsibility.

*Chew* thus concluded that upon resentencing, section 2900.5, which sets forth the trial court's duty to calculate presentence credits, "requires the sentencing court to determine the actual days of physical confinement of the nonprison kind, *including the extra or bonus credits earned* [*under section 4019*] *in the* [*county*] *jail* . . . , and the [actual] number of days served in prison pending resentencing. [On the other hand,] [o]ther code sections (§§ 2930-2935) assign to the Director of Corrections the duty of determining *prison* behavior and worktime credits, including the determination of appropriate worktime credits while the defendant is away from prison awaiting resentencing." (*Chew, supra,* 172 Cal.App.3d 45, 50, italics added.)

Except in one instance, subsequent cases have purported to apply *Chew* without reexamination when addressing the issue of credits upon a sentencing remand. In *People v. Robinson* (1994) 25 Cal.App.4th 1256 [31 Cal.Rptr.2d 445] (*Robinson*), a remand resulted in a modification of the defendant's sentence for attempted murder and possession of a deadly weapon, with enhancements. The sentencing court reawarded credits the defendant had earned prior to the original sentencing, but it granted no new credits. The defendant, who had not raised the credit issue in the trial court, objected in a second appeal that he was entitled to additional presentence credits for his time in custody before resentencing.

The Court of Appeal agreed that the defendant was entitled to additional credit, but it nonetheless dismissed the appeal, applying the rule that credit

issues must first be raised in the trial court. (*Robinson, supra*, 25 Cal.App.4th 1256, 1258-1259, citing *People v. Little* (1993) 19 Cal.App.4th 449, 451-452 [23 Cal.Rptr.2d 394], and *People v. Fares* (1993) 16 Cal.App.4th 954 [20 Cal.Rptr.2d 314].) Upon an appropriate motion below, the Court of Appeal noted, "the sentencing court [should] calculate and credit the defendant with the number of [actual] days spent in prison custody. On the other hand, calculation of credit for good behavior and for work time is the province of the prison administration. (§§ 2900.5, 4019; . . . *Chew*[, *supra*,] 172 Cal.App.3d 45, 48-51.)" (*Robinson, supra*, at pp. 1257-1258.)[9]

In *Thornburg, supra*, 65 Cal.App.4th 1173, the Fourth Appellate District applied *Chew*'s principles to a *Romero* remand in which, as the Court of Appeal expressly acknowledged, "the trial court [ultimately] exercise[d] its discretion by *not* striking the prior [Three Strikes] conviction(s) for sentenc- ing . . . ." (*Id.*, at p. 1175, italics in original.) The trial court reimposed the original four-year prison term, then denied the defendant's request for additional custody credits and a new abstract of judgment. On a second appeal, the Court of Appeal reversed the order denying custody credits. *Thornburg* held that upon a sentencing remand, the trial court must calculate and award appropriate presentence credits for all intervening confinement.

Applying *Chew, Thornburg* concluded that upon a further remand for recalculation of credits, the court below should determine all actual custody time, whether in jail or prison, add good behavior credits under section 4019 for any "time [the defendant] spent in jail pending resentencing," and issue a new abstract of judgment reflecting these credits. (*Thornburg, supra*, 65 Cal.App.4th 1173, 1175-1176.) This calculation, said *Thornburg*, should be entered "without prejudice" to the defendant's further right to earn prison worktime credits for the entire period of his confinement, but the calculation of such credits should be left to the Department of Corrections. (*Id.*, at p. 1176.)

Here, the Court of Appeal adhered instead to its own prior dictum in *Myers, supra*, 69 Cal.App.4th 305, which questioned *Thornburg*. In *Myers*, as in *Thornburg*, a *Romero* remand ultimately produced no change in the Three Strikes sentence originally imposed. The trial court awarded custody credits in an amount stipulated by the parties. Nonetheless, in an appeal following the remand, the defendant argued that the trial court should have awarded him additional good behavior credits under section 4019 for his

---

[9]The quoted passage does not mention the proper treatment of *jail* time while the sentence remand was pending (perhaps because the defendant there had spent no intervening time in jail), and it also implies, contrary to *Chew* and incorrectly, that good behavior credits under section 4019 are available to persons confined in state prison.

time in county jail while awaiting resentencing. The Court of Appeal disagreed, concluding that the credit issue had been waived by the stipulation below. (*Myers, supra,* at p. 312.)

In further comments, however, *Myers* labeled *Thornburg*'s "terse[]" reasoning "debatable." (*Myers, supra,* 69 Cal.App.4th 305, 311.) The *Myers* court declared that "[a] . . . defendant [once sentenced] remains in the constructive custody of the Department of Corrections, serving his or her sentence, while in local custody for the sole purpose of hearing on a motion to strike prior convictions. [Citation.] If the court denies the motion, resentencing is not necessary. Requiring a trial court to recalculate presentence custody credits and issue an amended abstract of judgment under these circumstances is to invite confusion and waste of [judicial] resources." (*Id.,* at pp. 311-312.)

For reasons explained at length above, we disagree with *Chew*'s premises that a sentencing remand transforms a prison sentence already in progress into presentence custody for purposes of the credit statutes, and that the defendant may therefore simultaneously earn both presentence jail time good behavior credits and prison worktime credits while removed from prison to jail pending the remand hearing. As *Myers* suggested, a felon once sentenced and committed to prison remains, despite a later remand on sentencing issues, in the custody of the Director, serving time against his ultimate sentence. This holds true whether he is confined in the penitentiary itself or is temporarily housed in county jail pending the remand hearing, and whether his sentence ultimately is modified or is left undisturbed. He may earn article 2.5 prison worktime credits for all confinement in the Director's custody, to the extent he is otherwise eligible, but he cannot accrue presentence good behavior credits under section 4019. Insofar as *People v. Chew, supra,* 172 Cal.App.3d 45, *People v. Robinson, supra,* 25 Cal.App.4th 1256, and *People v. Thornburg, supra,* 65 Cal.App.4th 1173, are inconsistent with these conclusions, those cases are disapproved.[10]

Accordingly, the Court of Appeal correctly concluded that defendant was not entitled to presentence good behavior credit under section 4019 for the time he spent in county jail while awaiting the remand hearing. On the other

---

[10]In *People v. Honea* (1997) 57 Cal.App.4th 842 [67 Cal.Rptr.2d 303], the Court of Appeal, purporting to apply *Chew,* held the defendant was entitled to section 4019 presentence credits for confinement between the original sentencing and a resentencing that followed the trial court's recall, within 120 days, of the commitment, as is authorized by section 1170, subdivision (d). We express no views on whether a defendant may earn presentence credits during such a period. Nor do we consider the proper credit treatment of one who spends time in custody after his *convictions* have been reversed on appeal, thus setting the entire matter at large for retrial.

hand, the Court of Appeal erred in concluding that the trial court had no responsibility whatever to recalculate custody credits upon the remand. As we have seen, under section 2900.1, the trial court, having modified defendant's sentence, should have determined all actual days defendant had spent in custody, whether in jail or prison, and awarded such credits in the new abstract of judgment.

The judgment of the Court of Appeal is therefore reversed. The cause is remanded for further proceedings consistent with the views expressed herein.

George, C. J., Kennard, J., Werdegar, J., Chin, J., and Brown, J., concurred.

Respondent's petition for a rehearing was denied August 29, 2001, and the opinion was modified to read as printed above.