Filed 11/25/24  P. v. Sandoval CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B335241 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA082399) |
| v. | |
| DANIEL SANDOVAL NAVARRO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Richard M. Goul, Judge.  Affirmed in part, reversed in part and remanded with directions.

James Koester, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

In 2012, defendant and appellant Daniel Sandoval Navarro was found guilty of one count of murder and two counts of attempted murder. His prison sentence included three 1-year enhancements pursuant to Penal Code section 667.5, subdivision (b), commonly referred to as prison priors. In 2023, the Department of Corrections and Rehabilitation referred defendant's case to the trial court for possible recall and resentencing in light of the passage of Senate Bill 483 (2021-2022 Reg. Sess.), the enactment of section 1172.75 (former § 1171.1) and the amendments made to section 667.5.

At the resentencing hearing in October 2023, the trial court struck the three prison priors and reimposed the same indeterminate terms on the murder and attempted murder counts. Defendant appeals, contending the trial court failed to take a valid waiver of his right to be present at the resentencing hearing and also failed to recalculate his custody credits.

We vacate the order in part and remand for the limited purpose of having the superior court recalculate the correct number of custody credits to which defendant is entitled pursuant to *People v. Buckhalter* (2001) 26 Cal.4th 20 (*Buckhalter*). We otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We grant defendant's request to take judicial notice of our prior opinion from his direct appeal. (*People v. Navarro* (July 19, 2013, B236494) [nonpub. opn.].)

On the evening of July 23, 2003, Alvaro S. was hanging out in the courtyard of a Long Beach apartment building with his two sons and four other men. A group of males entered the courtyard. One of the intruding males asked who was "the one fucking with [his] sister" and in short order, a "melee ensued." (*People v.*

2

*Navarro, supra,* B236494.) More than one of the assailants yelled out "This is BST," referring to Barrio Small Town, a criminal street gang. Defendant, his brother Francisco, Juan Manuel Aguas and Juan Carlos Portillo were members of BST. Alvaro S. was fatally stabbed during the attack, and two of the other men who had been in the courtyard with him received nonfatal knife wounds. (*Ibid.*) Witnesses saw and or heard two cars race from the area. (*Ibid.*) One of those cars was registered to the mother of Aguas. As it sped away, it crashed into a car and flipped over. The occupants climbed from the wreck and fled. (*Ibid.*)

Defendant was identified in court by Javier S. as one of the men involved in the attack. Javier thought defendant was one of the attackers wielding a knife. Testimony from the investigating officers and detectives confirmed that Javier had also identified defendant in a photographic lineup as one of the attackers. (*People v. Navarro*, *supra*, B236494.) Other evidence demonstrated that Benjamin E. and John E. had identified defendant in a photographic lineup. Benjamin wrote defendant " 'might have been there that night' " and John wrote defendant " 'was there that night.' " (*Ibid.*)

DNA testing performed on numerous broken bottles recovered from an alley near the crime scene established that biological material from one of the bottles matched defendant's DNA profile. (*People v. Navarro*, *supra*, B236494.)

Erick Moran, an accomplice who testified pursuant to an immunity agreement, said that in July 2003, he was dating Liliana, the sister of Aguas. Liliana told Moran that "some guys" from the KA's, a tagging crew from Long Beach, had harassed her and pushed her against a wall. (*People v. Navarro*, *supra*, B236494.) Moran went to Portillo's house. Aguas and other BST

3

members were there.  Moran told them what had happened to Liliana.  (*Ibid.*)

"Moran, Aguas, and Portillo got in a car to drive to Sixth Street."  (*People v. Navarro*, *supra*, B236494.)  People in one or possibly two other cars followed them.  They parked in an alley near an apartment building.  Aguas went into the courtyard first, but " '[e]verybody' in the alley went into the courtyard."  (*Ibid.*)  Aguas " '[s]ocked some guy,' " and then chased him when he ran.  (*Ibid.*)  The intruders who went in the courtyard " 'were fighting and some people were running out through the front.' "  (*Ibid.*)  Moran saw Portillo and Aguas fighting.  When asked initially if he saw defendant or his brother go into the courtyard, Moran said no.  But on redirect, "he testified that he did remember seeing them."  (*Ibid.*)  Moran said he did not personally know everyone who was involved.  (*Ibid.*)

Moran said he and the others fled the scene in separate cars.  He "heard or saw one of the cars crash.  The car 'flipped,' and two to four people got out and ran away."  (*People v. Navarro*, *supra*, B236494.)  The car belonged to Aguas's mother.  (*Ibid.*)

Jesus Prieto, another member of BST, testified and confirmed that defendant, his brother Francisco, Aguas and Portillo were all members of BST, as was Moran.  Prieto told the detectives about a night when he, defendant and his brother Francisco, Aguas and Portillo were at Portillo's house drinking.  "At some point, Prieto passed out.  The next day or a couple of days later, Portillo . . . made statements to the effect that 'they got in a fight' or 'got down with some gang,' or 'taggers.'  It was the same night they 'crashed the car.'  Portillo said 'he fucked some dudes up.' "  (*People v. Navarro*, *supra*, B236494.)

4

Defendant, Francisco, Aguas and Portillo were charged with one count of murder (Pen. Code, § 187, subd. (a); count 1) and two counts of attempted murder (§§ 187, subd. (a), 664; counts 2 & 3) arising from the attack.  Gang allegations were alleged as to all three counts.  (*People v. Navarro, supra,* B236494.)

The jury found defendant guilty on all three counts with true findings the offenses were committed for the benefit of, at the direction of or in association with a criminal street gang.  Defendant was sentenced to 55 years to life, plus three years, calculated as follows:  25 years to life on count 1, plus consecutive 15 years to life terms on counts 2 and 3, plus three 1-year enhancements for defendant's three prison priors (Pen. Code, § 667.5).  The court stayed a 10-year gang enhancement and awarded defendant 733 actual days of presentence custody credits.

In 2013, we affirmed defendant's conviction.  (*People v. Navarro, supra,* B236494.)

After defendant's judgment became final, the Legislature passed Senate Bill 483, which, as relevant here, enacted Penal Code section 1172.75.  The new statute provides that "[a]ny sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code is legally invalid."  (§ 1172.75, subd. (a).)  The statute provides a procedural mechanism for defendants to obtain a review of their sentences and possible resentencing.

In March 2023, the Department of Corrections and Rehabilitation referred defendant's case to the trial court for possible recall and resentencing.

The court set a hearing date pursuant to Penal Code section 1172.75 and the parties filed briefs. Defendant requested a full resentencing, asking specifically that the court strike the three 1-year prison priors, and run the terms on counts 2 and 3 concurrently instead of consecutively.

Counsel for the parties appeared on September 14, 2023. Defendant was not present. Defense counsel, who appeared via Webex, represented to the court that "[defendant] has indicated to me he does not want to return from state prison for the hearing." The court advised counsel that it wanted both attorneys to appear in person for argument and the resentencing hearing was therefore continued to October 31, 2023.

On October 31, 2023, defendant's appointed counsel and the prosecutor appeared in person. Defendant was again not present. Defense counsel told the court again, "My client is not present. I have talked to him over the phone and he has indicated to me that he does not want to be here." The record contains no further discussion of defendant's absence and there is no written waiver in the record before the court.

The People conceded that defendant's three 1-year prison priors should be stricken because they were not qualifying sexual offenses, but otherwise opposed any other change to defendant's sentence.

The trial court recalled defendant's sentence and resentenced him as follows. The court struck the three prison priors and declined to modify the balance of defendant's sentence. The court said the "interest of justice" warranted consecutive

sentencing on the three counts involving separate victims. The gang enhancement was again stayed. The court said it based its ruling on review of the court file, including the available transcripts. The court also noted that defendant was 30 years old at the time of the crimes with a "significant criminal record." Defendant's total sentence was 55 years to life in prison. The court's minute order states that the Department of Corrections and Rehabilitation shall recalculate total credits.

This appeal followed.

## DISCUSSION

### 1. Right To Be Present.

A defendant has a constitutional right to be present at all critical stages of a criminal proceeding. (U.S. Const., 6th & 14th Amends.; Cal. Const., art. I, § 15.) The state constitutional right to be present is generally deemed to be "coextensive with the federal due process right." (*People v. Basler* (2022) 80 Cal.App.5th 46, 57.) Sentencing and resentencing hearings are considered critical stages. (*People v. Nieves* (2021) 11 Cal.5th 404, 508 (*Nieves*); *People v. Doolin* (2009) 45 Cal.4th 390, 453; *People v. Rouse* (2016) 245 Cal.App.4th 292, 300.)

A criminal defendant may waive his constitutional right to be present at a critical stage in the proceeding "provided the waiver is knowing, intelligent, and voluntary." (*People v. Cunningham* (2015) 61 Cal.4th 609, 633.) In addition, under state statutory law, a defendant in a felony criminal case may waive the right to be "physically or remotely present" but such waiver must "be in writing and filed with the court or, with the court's consent, may be entered personally by the defendant or by the defendant's counsel of record." (Pen. Code, § 977, subd. (b)(2).) A waiver of the statutory right to be present made

7

by a defendant's counsel is valid if counsel states "on the record . . . that the defendant [was] advised of the right to be physically or remotely present for the hearing at issue, [has waived that right], and [has] agree[d] that notice to [counsel] that the defendant's physical or remote presence [is required] at a future date" shall be notice to the defendant. (*Id.,* subd. (b)(2)(A).) Here, defense counsel twice represented to the court that he had spoken with defendant about the hearing and that defendant had stated he did not want to attend.

In deciding whether a defendant has knowingly and voluntarily waived his constitutional right to be present, our Supreme Court has said, that "[a]t a minimum, there must be some evidence that the defendant understood the right he was waiving and the consequences of doing so." (*People v. Davis* (2005) 36 Cal.4th 510, 532 (*Davis*).) In *Davis*, the defendant's counsel made a representation to the court similar to the one counsel made here, namely that he had discussed the hearing with his client and he had decided to waive his presence. (*Ibid*.) *Davis* found counsel's representation inadequate, explaining "There is no evidence that defense counsel informed defendant of his right to attend the hearing; nor is there evidence that defendant understood that by absenting himself from the hearing he would be unable to contribute to the discussion of the contents of the tape recording. Accordingly, we cannot conclude that defendant knowingly and intelligently waived his right to presence at the hearing." (*Ibid*.)

While defendant may have knowingly and voluntarily waived his right to appear during his discussions with his counsel, the record fails to contain an adequate recitation of it.

8

Error by the trial court in failing to take a proper waiver of the right to be present is subject to harmless error analysis. (*Davis*, *supra*, 36 Cal.4th at pp. 532-533 [constitutional error "pertaining to a defendant's presence is evaluated under the harmless-beyond-a-reasonable-doubt standard set forth in *Chapman v. California* (1967) 386 U.S. 18, 23"]; *People v. Poore* (2022) 13 Cal.5th 266, 292 [distinguishing between constitutional right to be present and state statutory right under Pen. Code, § 977 and holding that reversal for state statutory error "is required 'only if it is reasonably probable defendant would have obtained a more favorable result absent the error' "].)

We conclude any error by the court in failing to take a proper waiver of defendant's right to be present at the resentencing hearing was harmless by any standard. It was defendant's burden to establish his absence at the resentencing hearing was prejudicial. (*People v. Blacksher* (2011) 52 Cal.4th 769, 799.) Defendant has not done so.

Defendant argues the court may have been swayed by the prosecutor's argument that defendant had not wanted a new probation report prepared for the hearing, suggesting that his prison record would have shown negative behavior and no effort at rehabilitation. He says Penal Code section 1172.75 allows the court to consider postsentence factors in resentencing and that he should have been present at the hearing to counter that suggestion by the prosecutor. We are not persuaded by this speculation. Nothing in the record indicates the court considered postsentence factors relevant in making its resentencing choices.

*Nieves*, *supra*, 11 Cal.5th 404 is instructive. There, the Supreme Court found a defendant's absence without a valid waiver at a restitution hearing was harmless beyond a

9

reasonable doubt. (*Id*. at p. 509.) The court noted that defense counsel had been aware of the proposed victim restitution amount for some two months and had ample opportunity to discuss it with the defendant. And, counsel had argued the restitution issue thoroughly before the court. (*Ibid*.) *Nieves* observed, "There is nothing in the record to indicate that [the] defendant would have added any significant information about her inability to pay beyond that presented by defense counsel." (*Ibid*.)

The same is true here. The trial court struck the enhancements in accordance with the amended laws but otherwise focused on the violent nature of the three charges against separate victims and defendant's past criminal history in declining to run the counts concurrently instead of consecutively as requested by defendant. There is nothing in the record that supports the conclusion that defendant could have added any information that would have been significant to the court's decision. Defendant's absence was harmless beyond a reasonable doubt.

## 2. Custody Credits

The People concede defendant's argument the superior court was required to recalculate his custody credits in accordance with *Buckhalter*, *supra*, 26 Cal.4th 20. *Buckhalter* instructs that where, as here, "a prison term already in progress is modified . . . , the sentencing court must recalculate and credit against the modified sentence all actual time the defendant has already served, whether in jail or prison, and whether before or since he was originally committed and delivered to prison custody." (*Id*. at p. 29.) The trial court failed to do so, imposing

10

only the original 733 actual days of presentence custody credits as calculated at the original sentencing in 2012.

We agree *Buckhalter* controls here. We remand for the limited purpose of allowing the superior court to correctly calculate defendant's custody credits and to prepare a new abstract of judgment.

## DISPOSITION

The order is vacated only to the extent the superior court failed to recalculate custody credits. The case is remanded to the superior court for a recalculation of custody credits in accordance with *Buckhalter*, *supra,* 26 Cal.4th 20. After recalculating custody credits, the superior court is directed to prepare a new abstract of judgment and transmit it to the Department of Corrections and Rehabilitation.

The order is affirmed in all other respects.


GRIMES, J.


WE CONCUR:


STRATTON, P. J.


WILEY, J.

11