[No. G043158. Fourth Dist., Div. Three. Dec. 21, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
FEDERICO ROSAS, Defendant and Appellant.

**COUNSEL**

Catherine White, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Gary W. Schons, Assistant Attorney General, Steve Oetting and Robin Derman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SILLS, P. J.—**

## I. INTRODUCTION

One of the issues in this appeal from the resentencing of Federico Rosas for two attempted murders of a rival gang member raises a question of first impression in criminal sentencing procedure: Does a trial court, upon appellate remand for resentencing, have the legal authority to make a new restitution fine order, even if the original restitution order was never addressed in the appeal that led to the remand in the first place? Or, alternatively, is the original restitution order "final"? Here, because the remand was for resentencing and restitution fines are statutorily interrelated with a defendant's sentence, we conclude the trial court was indeed within its authority to make a new, *lower*, restitution order on resentencing.[1]

## II. BACKGROUND

This is the second appeal in this case. The first one resulted in a remand to the trial court for resentencing because the Attorney General's office itself identified no less than 11 separate sentencing "defects" the first time around. (See *People v. Rosas* (June 24, 2009, G040153) [nonpub. opn.] (*Rosas*).)

It is not hard to see why sentencing was a relatively complex matter: While the essential facts are simple, those facts implicate a number of crimes.

Those facts are these: In the fall of 2003, Rosas was a member of the Southside Huntington Beach gang and had already been convicted of a

---

[1] Of course, as noted by the court in *People v. Burbine* (2003) 106 Cal.App.4th 1250, 1253 [131 Cal.Rptr.2d 628] (*Burbine*): "It is settled that a felony defendant's original aggregate prison term cannot be *increased* on remand for resentencing following a partially successful appeal."

felony. One day, while Rosas was driving around in a white Lincoln, he noticed a member of a rival street gang, the Lopers, get in a car and hurriedly drive away from him. When the rival gang member stopped at an intersection, Rosas's car stopped about 60 feet behind. Then Rosas fired a gunshot at the rival gang member's car. The light changed, and after the rival's car pulled about 30 feet ahead, Rosas fired another shot at the rival's car. (*Rosas, supra*, G040153 [nonpub. opn.].)

From this scenario, Rosas was convicted of a total of six counts: two counts of attempted murder, two counts of shooting at an occupied motor vehicle, one count of being a convicted felon in possession of a firearm, and one count of street terrorism. In the first appeal, the main issue was whether Penal Code section 654[2] (proscribing dual or multiple punishments for the same act) prohibited the imposition of separate sentences for both counts of attempted murder. The answer was no: Each shot was a separate aim and trigger pull, and in fact the time between the shots only increased the culpability of the second gunshot. (*Rosas, supra*, G040153 [nonpub. opn.].) That point is now law of the case and accepted (at least for purposes of this second appeal) by Rosas.

However, as mentioned, resentencing was in any event required. In this appeal, Rosas raises three challenges to the new sentence. The new sentence consists of:

—consecutive life terms for the two attempted murders (30 years required before Rosas is eligible for parole), plus an extra 20 years for using a gun;

—10 years for the two shooting-at-an-occupied-vehicle counts (plus an extra three years for doing so in the service of a gang), but these sentences are stayed under section 654, and this aspect of the sentence is not otherwise relevant to this appeal;

—four years for street terrorism, but this sentence is stayed under section 654, and this aspect of the sentence is also not otherwise relevant to this appeal;

—four years for being a felon in possession of a firearm, to be served consecutive to the other counts;

—an extra five years because Rosas had committed a previous felony;

—a restitution fine of $5,000 and a $5,000 parole revocation fine, though the abstract of judgment continues to reflect a restitution fine of $10,000 and a parole revocation fine of $10,000 from the *first* sentencing.

---

[2] All further statutory references are to the Penal Code.

The trial court also struck the gang enhancement on the felon-in-possession-of-a-firearm count (a point the Attorney General's Office contends was error, but does not press in this appeal on the ground there was no objection by the prosecutor).

Rosas challenges the new sentence with these three arguments:

—First, he argues that the additional (i.e., consecutive) four years for being a felon in possession of a firearm should have been stayed under section 654.

—Second, he claims the abstract of judgment should be corrected to reflect the trial judge's oral reductions in the restitution and parole revocation fines.

—Third, he claims that he should be given presentence credits to reflect the fact that, by the time of the second sentencing, he had, after all, served more time.

The Attorney General's Office agrees with the third argument, the recalculation of the presentence credits. We will accordingly so direct in our disposition.

The first argument may also be dealt with summarily. The very circumstances of the two shootings show that Rosas's possession of a firearm—possession *qua* possession as distinct from possession in order to commit a specific crime—was a distinct and separate act from the two shootings. Remember, Rosas was *already* driving around in his white Lincoln when he was first seen by a rival gang member. That gang member took flight and Rosas gave chase in his car. Then, upon catching the rival at an intersection, Rosas took his two potshots. From this scenario the jury could readily and reasonably infer that Rosas *already had* a gun with him in the car. He did not stop off at some compatriot's house to pick up a gun *just so* he could shoot his rival upon catching him. There were thus no "fortuitous circumstances" putting the weapon in Rosas's hand at the moment of the other offenses such that the act of possession might in some meaningful way be indistinguishable from the two attempted murders. (See *People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1413 [273 Cal.Rptr. 253] [rejecting application of § 654 where defendant still had gun at the time of his arrest 30 minutes after two robberies because of lack of fortuitous circumstances placing gun in defendant's possession].)

That leaves the second argument, involving the reduction in the two fines, which is a bit more complex.

### III. DISCUSSION

#### A. *Additional Background on the Fine Reduction Issue*

At the second sentencing hearing, the trial judge said: "At the request of the defense, the court has reconsidered the state restitution fund. The court is prepared to cut that in half at this time. The court will order that the defendant pay a $5,000 state restitution fund fine. The court [will] order $120 as a court security fee. The court will order a $5,000 parole revocation fee. That last order is stayed pending his successful completion of probation." However, the abstract of judgment retains the original $10,000 amounts for both the restitution fine and the parole revocation fine. It is the failure of the abstract of judgment to reflect the trial judge's order that is now challenged by Rosas in this appeal.

It is important, before we wade into the merits of this issue, to step back and appreciate the ungainly procedural posture into which a *clerk's error* has contorted the case in terms of this second appeal:

One, Rosas was convicted of multiple crimes, and sentenced. His sentence included a $10,000 restitution order.

Two, Rosas appealed, but did not raise the question of whether the $10,000 restitution order was outside the scope of the trial court's discretion. (And probably would not have had any success if he had, since, as the Attorney General correctly points out, the original $10,000 restitution order was certainly "authorized" under the applicable statute.) Outside of his section 654 argument, Rosas's attack on his sentence was focused on the felon-in-possession count (count 5) and, more specifically, the trial court's omission of an express disposition as to whether that count was to run concurrently with or consecutively to the two attempted murder counts. In its respondent's brief, however, the Attorney General's Office countered with what it asserted were no fewer than "11 sentencing defects" that it argued the trial court needed to address on what was now an inevitable remand.[3] We will take judicial notice of our files (though the point is intuitive anyway) and note that none of these "11 sentencing defects" included the proposition that the $10,000 restitution order was too high, though—ironic given the current case—the Attorney General's Office *did* complain, as one of the 11 sentencing defects, that the original $10,000 restitution and parole revocation fines orally ordered by the trial judge failed to make their way into the abstract of judgment.

Three, in the first appeal, this court affirmed the judgment of conviction and held that section 654 did not apply to the two attempted murders.

---

[3] The "primary one," to quote the Attorney General's Office's brief in the first appeal was "the court appears not to have sentenced appellant as a second-striker."

However, we gave a number of particular directions to the trial court as to how to proceed on remand (things like requiring the trial court to orally state whether it wanted the felon-in-possession count to run concurrently or consecutively with the other sentences and to state a disposition of the criminal street gang enhancement). None of those directions, however, mentioned either the restitution or parole revocation fine. In the "disposition" portion of the opinion we said: "We affirm the judgment of conviction. The matter is remanded to the trial court with directions to set aside the sentence and to resentence Rosas in accordance with the views expressed in this opinion."

Four, on remand, Rosas's attorney asked the trial court, for the first time, to reconsider the restitution fund order. The prosecutor, from the district attorney's office, did not object. The trial court *did* reconsider the restitution order, and orally pronounced a new $5,000 restitution order, as well as a new $5,000 parole revocation fee. (We may pause here to note that, as we mention later on, under the text of the parole revocation fee statute, the parole revocation fee is pegged to the restitution order. (See also *People v. Jones* (1999) 75 Cal.App.4th 616, 635 [89 Cal.Rptr.2d 485] ["In addition, the Attorney General argues that the trial court had a jurisdictional responsibility to impose an additional fine pursuant to section 1202.45, in the same amount as the section 1202.4, subdivision (b) fine, to be suspended unless the defendant's parole is revoked. We agree . . . ."]).)

Five—and this is where the procedural posture of this case goes a little sideways—while the trial court judge clearly made a $5,000 restitution order (and parole revocation fee) orally on the record, the figure did not make its way into the abstract of judgment, which still provides for a $10,000 restitution order. (This is thus the second time in this case where the abstract of judgment has not reflected, as regards the restitution and parole revocation fines, what the trial judge orally ordered!) This point is remarkable, because had the abstract of judgment reflected what the trial court orally provided, it would be the People who would now be the appellant on the question of whether the trial court had the legal *authority* or otherwise abused its discretion in reducing the restitution and parole revocation fines on remand.

Which leads us to:

Six, in this second appeal, Rosas's argument is *not* that the trial court *judge* erred in setting forth a new restitution order, but that a court *clerk* erred in simply not getting down on the abstract of judgment what the trial judge actually ordered. Let us at this moment note that the Attorney General's Office certainly does not waste its breath attempting to argue that abstracts of judgment should not be corrected to reflect what the trial judge actually

orders. That would be an untenable position. (E.g., *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [109 Cal.Rptr.2d 303, 26 P.3d 1040] ["Courts may correct clerical errors at any time, and appellate courts (including this one) that have properly assumed jurisdiction of cases have ordered correction of abstracts of judgment that did not accurately reflect the oral judgments of sentencing courts."].) Rather, the Attorney General's Office argues that the trial court lacked *jurisdiction* to reduce the fines in the resentencing hearing because the issue of the fines had not been raised in the first appeal.

### B. *The Waiver Doctrine in the Context of this Case*

According to the People, the fact that neither Rosas's original trial attorney nor his original appellate attorney raised the issue of the *amount* of the restitution fine, in the first appeal, effectively "waived the contention." To this point, Rosas's current appellate attorney (not the one from the original appeal) counters with the fact that at resentencing the prosecutor himself did not object to the new restitution fine.

Thus, at the first level of analysis, both parties seem to be essentially presenting the case as a question of whose waiver will reign supreme: Rosas's from the first time around, or the prosecutor's from the second time around?

But framing the issue as one of dueling waivers misses one essential word in the Attorney General's Office's argument: Did the trial court even have the *jurisdiction* to provide for a new restitution order on remand? If the trial court had no jurisdiction to make the order, then it makes no difference that the prosecutor did not object. And if the trial court *did* have jurisdiction, then the question becomes whether the trial court abused its discretion in reducing the fines—and that's a considerably more forgiving standard of review than whether the trial court simply acted outside its legal authority.

First off, we should note that the paradigm for waiver of criminal sentencing issues articulated in *People v. Scott* (1994) 9 Cal.4th 331 [36 Cal.Rptr.2d 627, 885 P.2d 1040] (*Scott*), really has no application to the context of this case. (Or if it did, the *Scott* paradigm would cut against the Attorney General's Office's position here, where it was the prosecutor who failed to disabuse the trial court of the error it was about to make.)

*Scott* involved a technical failure of the trial court to articulate reasons for a sentencing choice. (See *Scott, supra*, 9 Cal.4th at p. 353.) The decision eliminated the "gotcha" tactic of trial defense counsel in playing possum in the face of the failure of the trial court to articulate a reason for discretionary sentencing choices when such articulation was otherwise required of it. Under

such circumstances, application of the "waiver doctrine" was obvious. The idea was to prevent easily preventable sins of omission.[4]

The *Scott* kind of waiver is not the kind at issue here, most obviously because there was no sentencing *error*, otherwise preventable by the aggrieved party speaking up. (Well, if there was something preventable, the aggrieved party was the People and the prosecutor did not speak up.) Moreover, *Scott* is a true waiver case, not one in which a waiver implicates a *jurisdictional* limitation on the trial or appellate court.

It is important to keep the concepts of waiver and jurisdiction straight. For example, in ordinary appeals, appellate courts regularly *use their discretion* to entertain issues not raised at the trial level when those issues involve only questions of law based on undisputed facts. (E.g., *Air Machine Com SRL v. Superior Court* (2010) 186 Cal.App.4th 414, 421, fn. 7 [112 Cal.Rptr.3d 482] ["Although appellate courts ordinarily will not consider a matter raised for the first time on appeal, whether to apply that rule is largely a question of the appellate court's discretion."].) Those issues might be *waived* and otherwise might be ignored, but in any event there is no jurisdictional bar to their consideration on appeal.

On the other hand, when matters are truly final, a court has no *jurisdiction* to change them, regardless of waiver. (E.g., *Passavanti v. Williams* (1990) 225 Cal.App.3d 1602 [275 Cal.Rptr. 887] [generally discussing trial court's inability to change its judgments after they become final].)

The closest authority on point that *might* support a waiver under the circumstances of this case (at least of which we are aware) is *People v. Senior* (1995) 33 Cal.App.4th 531 [41 Cal.Rptr.2d 1] (*Senior*). There, the defendant was convicted of nine counts. On counts three through seven, the trial court imposed five full consecutive mitigated terms of three years each. (*Senior, supra*, 33 Cal.App.4th at p. 533.) The defendant then appealed—call this "appeal 1." In appeal 1, the defendant asserted only one instance of sentencing error, and that did not concern counts three through seven, but rather consisted of a failure to articulate reasons for imposing full consecutive terms on two other counts, nine and 10. (*Id.* at pp. 533–534.) Disposing of appeal 1,

---

[4] That is, there was no principled reason to give trial defense counsel an incentive to snooker the trial judge into giving them a get-a-free-reversal-on-appeal card. Here is the applicable text from *Scott*: "We conclude that the waiver doctrine should apply to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices. Included in this category are cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons." (*Scott, supra*, 9 Cal.4th at p. 353.)

the appellate court affirmed the convictions but ordered resentencing because of the failure to articulate reasons for the consecutive sentences on the two other counts. On remand, the trial court did the same thing again as regarded counts three through seven (imposed full consecutive mitigated terms of three years each), but the trial court changed its approach as regarded counts nine and 10. Then came appeal 2, in which the defendant again challenged the disposition of counts nine and 10, and yet again ignored counts three through seven. The appellate court agreed with the challenge as to counts nine and 10, and again remanded the case for resentencing. The third time around, the trial court again did the same thing as to counts three through seven, but again changed its approach as to counts nine and 10. (*Id.* at pp. 533–534.) The published opinion in *Senior* was the outcome of appeal 3.

And it was in appeal 3 that the defendant in *Senior* finally got around to arguing sentencing *error* as regarded the disposition of three of the counts (three, five and six) that had gone completely unchallenged in the previous appeals. (*Senior, supra,* 33 Cal.App.4th at p. 534.) Enough was enough, said the *Senior* court, who invoked "judicial economy" to hold that the defendant had waived his right to raise any claim of sentencing error, having had the chance to do so twice already. (See *id.* at pp. 534–538.) The bulk of the opinion essentially imports a common law waiver doctrine from federal case law; perhaps the most noteworthy was the invocation of *Martin v. Atlantic Coast Line Railroad Co.* (5th Cir. 1961) 289 F.2d 414 (*Martin*), which rejected the specter of " 'piecemeal' " consideration of cases just because " 'the attorneys generate an idea they should have advanced by specification of error on the first appeal.' " (*Senior, supra,* 33 Cal.App.4th at pp. 535–536, italics omitted, quoting *Martin, supra,* 289 F.2d at p. 416.)

*Senior* thus articulates a common law waiver doctrine, in a case of a discrete claim of legal sentencing error. Importantly, as the *Senior* court noted about the claim of error there, "all of the factual predicates upon which defendant's present contention rests were available at the time of defendant's initial appeal." (*Senior, supra,* 33 Cal.App.4th at p. 538.)

As we are about to show, however, the same cannot be said about the case before us now.

### C. *The Severability Doctrine in the Context of this Case*

There is a time when a lack of jurisdiction, as distinct from common law waiver, will preclude any reconsideration of issues on remand or a second appeal. And that time is when the previous appeal was from a *severable* judgment, and the opening brief in that previous appeal only challenged some aspects of the severable judgment. As explained in the Rutter guide: "An

aggrieved party . . . can choose to take only a *partial* appeal from a 'severable' part of a judgment. This can occur . . . where a party is aggrieved by all aspects of a judgment but for some reason does not wish to challenge the judgment in its entirety. [¶] (An appeal can be made 'partial' by . . . specifying the entire judgment in the notice of appeal but challenging only a part of the judgment in the opening brief." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2009) ¶ 2:312, p. 2-161 (rev. # 1, 2009) (Eisenberg Rutter Guide).)

Such partial appeals can have an absolutely preclusive effect on portions of the judgment that are not mentioned in the opening brief: "*If a judgment is severable, the unappealed portions are final and left in full force. The appellate court lacks jurisdiction to consider the portions not appealed*; and a reversal or modification of the appealed portion has no effect on the unappealed portions. In other words, a partial appeal effectively 'abandons' the right to appellate review of the several parts of a judgment that were not appealed." (Eisenberg Rutter Guide, *supra*, ¶ 2:317, p. 2-162 (rev. # 1, 2009), some italics added, citing *Gonzales v. R.J. Novick Constr. Co.* (1978) 20 Cal.3d 798, 805–806 [144 Cal.Rptr. 408, 575 P.2d 1190] & *ReadyLink Healthcare v. Cotton* (2005) 126 Cal.App.4th 1006, 1014–1015 [24 Cal.Rptr.3d 720].)

In the case before us, however, the matter of the restitution and parole revocation fines is most assuredly not severable from the sentencing issues that were sent back to the trial court upon the first appeal. As Justice Hollenhorst pointed out almost 20 years ago in *People v. Begnaud* (1991) 235 Cal.App.3d 1548, 1552 [1 Cal.Rptr.2d 507] (*Begnaud*), California's determinate sentencing law presents an "interlocking" whole. As Justice Hollenhorst noted, if there was any "one respect" in which implementation of California's determinate sentencing law is "fairly clear," it is that "when a defendant is sentenced consecutively for multiple convictions, whether in the same proceeding or in different proceedings, the judgment or aggregate determinate term is to be viewed as interlocking pieces consisting of a principal term and one or more subordinate terms." (*Id.* at pp. 1551–1552.)

As presenting an interlocking whole, then, sentencing claims would normally fall under the established rule of appellate procedure that even partial appeals from *nonseverable* judgments allow a court the jurisdiction to review the entire judgment. (See Eisenberg Rutter Guide, *supra*, ¶ 2:314, pp. 2-161 to 2-162 (rev. # 1, 2009).)

The best example of nonseverability in the criminal context we have found is *Burbine, supra*, 106 Cal.App.4th 1250. *Burbine*, ironically enough, exemplifies why the jurisdictional power of a trial court to reconsider all aspects of

a criminal sentence will *usually* (the case before us is the exception) inure to the benefit of the position advanced by the People (in at least allowing the possibility that the resentenced aggregate prison term might be equal, though certainly not greater than, the original prison term).

In *Burbine*, the defendant was convicted of three counts—one for continuous sexual abuse of a child, two for committing a lewd act on a child. His total sentence was 16 years, based in part on the imposition of a *middle term* of 12 years for the continuous sexual abuse count. In a subsequent appeal and habeas corpus proceeding, the defendant did not attack the imposition of the middle term on the continuous sexual abuse count. The defendant made three other arguments. But one of those was a winner: The appellate court accepted his argument that one of his lewd act convictions was invalid because of faulty jury instructions. (*Burbine, supra,* 106 Cal.App.4th at p. 1254.) So back for resentencing.

And, on resentencing, despite the absence of one of the lewd act counts, the trial judge managed to once again come up with a total sentence of 16 years. This time, the trial judge reached the figure by imposing the upper term of 16 years for the continuous abuse count, and having the remaining lewd act count run concurrently with it. (*Burbine, supra,* 106 Cal.App.4th at p. 1256.)

Disappointed, the defendant appealed, arguing it was unfair that the trial judge had contrived to deprive him of any real benefit of his earlier win on appeal. In particular, the defendant argued (rather similar to the People's position here) that on remand the trial court did not "regain jurisdiction to modify the sentence imposed for counts that were affirmed on appeal." (*Burbine, supra,* 106 Cal.App.4th at p. 1257.)

But the argument failed. The *Burbine* court held that the trial court "regained jurisdiction over appellant's sentence when [the appellate court] remanded the matter for resentencing." (*Burbine, supra,* 106 Cal.App.4th at p. 1257.) And why? Because of the interlocking quality of felony sentences under California's determinate sentencing law. Said the *Burbine* court: "Appellant relies on [*People v.*] *Karaman* [(1992) 4 Cal.4th 335 [14 Cal.Rptr.2d 801, 842 P.2d 100]] for the proposition that a remand for resentencing vests the trial court with jurisdiction only over that portion of the original sentence pertaining to the count that was reversed, and not over his sentence for the affirmed counts. *This assumes that a felony sentence for a multiple-count conviction consists of multiple independent components, rather than being an integrated whole—a view that has been repeatedly rejected by other courts that have considered the issue.*" (*Burbine, supra,* 106 Cal.App.4th at p. 1257, italics added.)

If one thinks about *Burbine* in the context of the case before us, it should be clear that it cannot be squared with the Attorney General's Office's position that the trial court lost jurisdiction to modify the restitution and parole revocation fines. After all, as in the case before us, in *Burbine* the defendant did not challenge in his first appeal the discretionary decision of the trial judge to give him the middle term on the continuous abuse count, so wasn't it final? No—because of the interlocking quality of the sentencing law, the first appeal had been effectively nonseverable.

That is, *Burbine* cannot be squared with the Attorney General's Office's position in this case *unless* restitution and parole revocation fines are somehow *severable* from a prison sentence as such, so that the "interlock" rationale used in *Burbine* (and at least two other cases[5]) would not apply to those fines.

■ It pays to read the statute. Restitution fines are governed by section 1202.4. The statute is long, so we will only quote the relevant subdivisions, (b) and (f), in the margin.[6] The salient points are these: Subdivision (b)(2) first

---

[5] See *Begnaud, supra,* 235 Cal.App.3d 1548, 1552 ("Because of this interlocking aspect of DSL, it has been recognized that when a sentencing error is made with respect to one part of the judgment, a remand for resentencing on all of the convictions is often proper."); *People v. Savala* (1983) 147 Cal.App.3d 63, 68 [195 Cal.Rptr. 193] *(Savala)* ("The legal interdependence of the components of an aggregate sentence cannot be denied in view of the numerous provisions of the Penal Code tying the components to each other. (E.g., Pen. Code, § 1170.1, subd. (a).) Indeed, it was the legal interdependence of the components of defendant's original sentence which entitled him to a remand for resentencing after his first appeal.") A later opinion from the same court, *People v. Foley* (1985) 170 Cal.App.3d 1039 [216 Cal.Rptr. 865], would part company from *Savala* on an unrelated topic (supplemental probation reports).

[6] Section 1202.4, subdivision (b):

"In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so, and states those reasons on the record.

"(1) The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense, but shall not be less than two hundred dollars ($200), and not more than ten thousand dollars ($10,000), if the person is convicted of a felony, and shall not be less than one hundred dollars ($100), and not more than one thousand dollars ($1,000), if the person is convicted of a misdemeanor.

"(2) In setting a felony restitution fine, the court may determine the amount of the fine as the product of two hundred dollars ($200) multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted."

Subdivision (f):

"Except as provided in subdivisions (q) and (r), in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. If the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court. The court

gives the trial judge *discretionary* authority to calculate a benchmark restitution fine based on "the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted." Then, subdivision (f) gives that same trial court, *even on its own motion*, the discretionary ability to modify the benchmark amount. ("The court may modify the amount, on its own motion or on the motion of the district attorney, the victim or victims, or the defendant.")

■ We therefore cannot say that a restitution fine is a severable part of a judgment, subject to the rule that if it is not attacked in an opening brief, the fine is therefore final.

What about parole revocation fines? The governing statute, section 1202.45,[7] is a shorter statute. In this case it is triggered by the possibility that, after 30 years, Rosas might be eligible for parole. As noted, the text of section 1202.45 provides that parole revocation fines must be the same as restitution fines under section 1202.4 (". . . an additional parole revocation restitution fine in the same amount as that imposed pursuant to subdivision (b) of Section 1202.4"). As section 1202.4 goes, so must section 1202.45.

---

shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record. The court may specify that funds confiscated at the time of the defendant's arrest, except for funds confiscated pursuant to Section 11469 of the Health and Safety Code, be applied to the restitution order if the funds are not exempt for spousal or child support or subject to any other legal exemption.

"(1) The defendant has the right to a hearing before a judge to dispute the determination of the amount of restitution. The court may modify the amount, on its own motion or on the motion of the district attorney, the victim or victims, or the defendant. If a motion is made for modification of a restitution order, the victim shall be notified of that motion at least 10 days prior to the proceeding held to decide the motion.

"(2) Determination of the amount of restitution ordered pursuant to this subdivision shall not be affected by the indemnification or subrogation rights of any third party. Restitution ordered pursuant to this subdivision shall be ordered to be deposited to the Restitution Fund to the extent that the victim, as defined in subdivision (k), has received assistance from the Victim Compensation Program pursuant to Chapter 5 (commencing with Section 13950) of Part 4 of Division 3 of Title 2 of the Government Code."

[7] Here's the entire statute: "In every case where a person is convicted of a crime and whose sentence includes a period of parole, the court *shall at the time of imposing the restitution fine pursuant to subdivision (b) of Section 1202.4, assess an additional parole revocation restitution fine in the same amount as that imposed pursuant to subdivision (b) of Section 1202.4.* This additional parole revocation restitution fine shall not be subject to penalty assessments authorized by Section 1464 or Chapter 12 (commencing with Section 76000) of Title 8 of the Government Code, or the state surcharge authorized by Section 1465.7, and shall be suspended unless the person's parole is revoked. Parole revocation restitution fine moneys shall be deposited in the Restitution Fund in the State Treasury." (§ 1202.45, italics added.)

### D. *And No Abuse of Discretion*

But there is still one last ingredient required to complete our analysis of Rosas's appeal. Despite what almost every petition for review seems to say, appellate courts really do try not to create any inconsistencies in the appellate case law. We must return now to the common law waiver rule articulated in *Senior* to ascertain that our result is not inconsistent with it.

█ As noted in *People v. Coelho* (2001) 89 Cal.App.4th 861 [107 Cal.Rptr.2d 729], the waiver rule articulated by the *Senior* court is a discretionary one, subject to exception for good cause or justification: "The general rule is that a defendant may not raise an issue in a second appeal that could have been raised in the first, absent a showing of good cause or justification. [Citation.] *However, this rule is not mandatory.* We decline to apply it in this case because defendant's lapse was not in failing to raise an issue but in failing to articulate the precise scope of his previous claim." (*Id.* at p. 874, fn. 5, italics added, citing *Senior, supra,* 33 Cal.App.4th at p. 538.)

We therefore test the trial court's decision to reconsider the restitution and parole revocation fines on an abuse of discretion standard. (Thus, it should be noted, if the trial judge had flatly rejected the idea of reducing the restitution fine because the issue of the amount hadn't been raised earlier, there is nothing in this record that would suggest he was being unreasonable, and *that* decision, under *Senior,* would certainly have been affirmed.)

█ Tested on an abuse of discretion standard, there is no question the trial judge's call in this case was reasonable. Unlike the scenario addressed in *Senior,* "all the factual predicates" that bore on the amount of the restitution fine were *not* present in the first appeal. The length of the sentence, which does bear on the fine, was still in flux at the time of the resentencing hearing.

### IV. DISPOSITION

The judgment is affirmed insofar as it provides for the service of the felon-in-possession count to be served consecutive to the two attempted murder counts.

The court is directed to correct the abstract of judgment to accord Rosas appropriate credit for time served as of the second resentencing hearing.

And the court is also directed to correct the abstract of judgment to reflect the $5,000 restitution and parole revocation fines which the trial judge orally ordered at the resentencing hearing.

We need only add that this last point is, in substance, an *affirmance* of the trial judge's decision. It's the clerk who is being reversed.

Moore, J., and Fybel, J., concurred.