Filed 5/8/13  P. v. McNair CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B238976 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA083700) |
| v. | |
| LAVANCE MCNAIR, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Charles D. Sheldon, Judge.  Affirmed.

Jonathan B. Steiner and Suzan E. Hier, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

In his second appeal after his original sentence was vacated,[1] defendant and appellant Lavance McNair (defendant) contends that because he was resentenced January 19, 2012, the trial court should have sentenced him to local custody under the recently enacted Criminal Justice Realignment Act of 2011 (Realignment Act or Act), which applies prospectively only to those sentenced on or after October 1, 2011.[2] Respondent contends that acceptance of defendant's position would contravene the Legislature's intent that the Act apply prospectively. We affirm the judgment.

## BACKGROUND

In 2010, after a jury trial, defendant was convicted of unlawfully driving or taking a car (count 1), in violation of Vehicle Code section 10851, subdivision (a), and unlawfully driving or taking a car with a prior conviction, in violation of section 666.5 (count 2). In addition, defendant was found to have served six prior prison terms within the meaning of section 667.5, subdivision (b). On August 4, 2010, the trial court sentenced defendant to the upper term of four years as to count 2, enhanced by one year for each of six prior prison terms, for a total term of 10 years in state prison. The trial court did not pronounce sentence as to count 1, although the minute order and abstract of judgment reflected a concurrent sentence of the high term of three years. Defendant was thereafter delivered to state prison and began serving his sentence.

Defendant appealed, and in *McNair I*, we affirmed the judgment but vacated the sentence and remanded for both resentencing by oral pronouncement and finding under section 654. On remand, defendant asked to be sentenced under the Realignment Act to local custody. The trial court denied the request and on January 19, 2012, resentenced

[1]    See *People v. McNair* (Sept. 29, 2011, B227076 [nonpub. opn.]), hereinafter *McNair I*, which was reviewed and decided pursuant to *People v. Wende* (1979) 25 Cal.3d 436 and *People v. Kelly* (2006) 40 Cal.4th 106, 112-113.

[2]    See Penal Code section 1170, subdivision (h), which has been amended since defendant's resentencing to add subdivision (h)(5)(B), which is not at issue here. (See Stats. 2012, ch. 43, § 27.) All further statutory references are to the Penal Code, unless otherwise indicated.

defendant to state prison. The trial court reinstated the total term of 10 years as to count 2, comprised of the high term of four years, plus one year for each of six prior prison terms served. (§ 667.5, subd. (b).) As to count 1, the trial court imposed the high term of three years, which it stayed pursuant to section 654.

Defendant filed a timely notice of appeal challenging his sentence to state prison.

## DISCUSSION

Defendant contends that the trial erred in refusing to sentence him to county jail under the Realignment Act, which added subdivision (h) to section 1170, providing that eligible felons are to serve their terms of imprisonment in local custody rather than state prison. The Legislature expressly mandated prospective application of the Act by including the following language in subdivision (h)(6) of section 1170: "The sentencing changes made by the act that added this subdivision shall be applied prospectively to any person sentenced on or after October 1, 2011."

Defendant contends that this court's order vacating his entire sentence placed him in the position of never having been sentenced; he thus concludes that his resentencing after October 1, 2011, was a new sentence to which the Act applied. We agree with respondent that the answer to defendant's contention lies in the construction of subdivision (h)(6) of section 1170 and whether the Legislature intended the meaning of "sentencing" to include resentencing after remand by the reviewing court. Like respondent, we conclude that it did not.

In *People v. Gipson* (2013) 213 Cal.App.4th 1523 (*Gipson*), this court noted that Division Eight of our district had held that, for purposes of the Realignment Act, a defendant is sentenced on the date that a trial court orders execution of a previously imposed but suspended sentence. (*Id.* at p. 1526; see *People v. Clytus* (2012) 209 Cal.App.4th 1001, 1004, 1009.) We disagreed with *Clytus*, holding that "a defendant is sentenced on the date that sentence is first announced and imposed even if execution of the sentence does not happen until a later date." (*Gipson*, at p. 1526.)

We observed in *Gipson* that section 1170, subdivision (h)(6) clearly applies the Realignment Act to "'any person sentenced on or after October 1, 2011,'" without

3

qualification. We concluded that the sentencing referred to in this provision plainly meant the occasion when the trial court first announced and imposed the sentence as opposed to the occasion when the sentenced was executed. (*Gipson, supra*, 213 Cal.App.4th at p. 1529.) We declined to force additional meaning into the word "sentenced" with the result that "sentenced" in reality would mean that the sentence was both imposed and executed. (*Ibid.*)

Defendant contends that another recent opinion demonstrates that the Legislature intended the Act to apply to persons whose pre-Act sentences were later found to be invalid. He relies on language in *People v. Cruz* (2012) 207 Cal.App.4th 664, in which the appellate court rejected an equal protection challenge to section 1170, subdivision (h)(6). In particular, defendant refers to the court's observation that among other reasons, prospective-only application was "necessary so as not to overwhelm trial court resources by requiring the resentencing of numerous inmates [and to maintain] the integrity of sentences that were valid when imposed . . . ." (*Cruz, supra*, at p. 679, fn. omitted.) Defendant's reliance on *Cruz* is unhelpful as that court was considering only the constitutionality of disparate treatment of a defendant with a valid sentence entered prior to October 1, 2011, and never considered the issue presented here, even indirectly. (See *id*. at p. 680.)

We thus turn to the rules of statutory construction to discern the Legislature's meaning. "'[T]he fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law.' [Citation.] As with any question of statutory interpretation, the best indication of legislative intent appears in the language of the enactment. [Citation.] Further, 'we do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is a part so that the whole may be harmonized and retain effectiveness."' [Citations.]" (*Peracchi v. Superior Court* (2003) 30 Cal.4th 1245, 1253 (*Peracchi*).) We interpret words in context, give them their plain and ordinary meaning, and avoid constructions that would render words surplusage. (*People v. Loeun* (1997) 17 Cal.4th 1, 9.)

4

"[T]he best indication of legislative intent appears in the language of the enactment. [Citation.]" (*Peracchi*, *supra*, 30 Cal.4th at p. 1253.) As respondent notes, the Legislature used the term "resentence" multiple times in section 1170. Subdivision (d) of section 1170 gives the superior court the authority under specified conditions to resentence the defendant after recalling the original sentence. A sentence recall has been described by the California Supreme Court as analogous to an appellate remand for resentencing. (*People v. Johnson* (2004) 32 Cal.4th 260, 265-266 (*Johnson*), citing *People v. Hill* (1986) 185 Cal.App.3d 831, 834 (*Hill*).) We agree with respondent that by using both words in different parts of the same statute, the Legislature meant what it said, and the "persons sentenced" in section 1170, subdivision (h), do not include "persons resentenced" after an appellate remand.

Additionally, an examination of the procedural and practical distinctions between sentencing and resentencing may be helpful in determining legislative intent. (See *Peracchi*, *supra*, 30 Cal.4th at p. 1256 [definition of "new trial" not intended to include a resentencing hearing after appellate remand].) The distinctions between "sentenced" and "resentenced" are well illustrated by the analogous distinction between presentence status and postsentence status for purposes of custody credit. That issue has arisen in cases involving claims of presentence custody credit after a recall or appellate remand after the defendant had already begun a prison sentence. (See, e.g., *People v. Buckhalter* (2001) 26 Cal.4th 20 (*Buckhalter*); *In re Martinez* (2003) 30 Cal.4th 29, 31; *Johnson*, *supra*, 32 Cal.4th at pp. 263, 265.) In *Buckhalter*, when the defendant claimed that the reversal of his invalid sentence meant that he was, in legal effect, unsentenced and thus entitled to presentence custody credits, the California Supreme Court was called on to construe the phrases "'prior to sentencing'" and "'prior to the imposition of sentence'" in section 2900.5, subdivision (d), and section 4019, subdivision (a)(4), the statutes providing for presentence custody credit. (*Buckhalter*, *supra*, at pp. 32, 34.) The California Supreme Court rejected the defendant's contention that he reacquired presentence status, noting that a remand for resentencing without a reversal of the defendant's conviction, even

5

where the sentencing court substantially modifies the sentence, does not render the original sentence void *ab initio*. (*Id*. at pp. 36, 40-41.)

Defendant suggests that the reasoning of *Buckhalter* is inapplicable here because this court "vacated" his original sentence, thus requiring full resentencing. Citing section 1260[3] and *People v. Rodriguez* (1998) 17 Cal.4th 253, 258 (*Rodriguez*), defendant points out that a limited remand to consider a sentencing issue does not necessarily require full resentencing. Defendant suggests that if we had reversed only the sentence as to count 1, rather than vacating the entire sentence in *McNair I*, his position might be different.

The facts of this case bear no similarity to those in *Rodriguez.* In *Rodriguez*, the court ordered a limited remand to consider dismissing prior strikes and for resentencing if the trial court decided to do so. (*Rodriguez, supra*, 17 Cal.4th at p. 260; see *Buckhalter*, *supra*, 26 Cal.4th at p. 34.) In *McNair I*, we vacated the entire sentence because a determinate sentence that comprises more than one term has interdependent components, and the invalidity of one component entitles the trial court "to rethink the entire sentence to achieve its original and presumably unchanged goal." (*Hill*, *supra*, 185 Cal.App.3d at p. 834; see also *People v. Rosas* (2010) 191 Cal.App.4th 107, 117-118 (*Rosas*) [determinate sentence as to multiple counts has interlocking quality].) Thus the result would have been the same if instead of using the word "vacated" in *McNair I*, we had reversed the sentence as to count 1 or simply remanded the matter for resentencing. (See *Rosas*, *supra*, at pp. 118-119 & fn. 5; *People v. Burbine* (2003) 106 Cal.App.4th 1250, 1258-1259 (*Burbine*).)

Defendant also relies on *Rosas* and *Burbine* to argue that it is precisely the interlocking quality of a determinate sentence on multiple counts that returns him to

---

**3**    Section 1260 authorizes the appellate court to "reverse, affirm, or modify a judgment or order appealed from, or reduce the degree of the offense or attempted offense or the punishment imposed, and [to] set aside, affirm, or modify any or all of the proceedings subsequent to, or dependent upon, such judgment or order, and . . . if proper, [to] order a new trial and . . . if proper, [to] remand the cause to the trial court for such further proceedings as may be just under the circumstances."

presence status, because a remand for resentencing reinvests the trial court with jurisdiction over the entire sentence. (See *Rosas*, *supra*, 191 Cal.App.4th at pp. 117-118 [trial court has jurisdiction to consider all aspects of sentence after reversal of nonseverable component]; *Burbine*, *supra*, 106 Cal.App.4th at p. 1258 [same].) Defendant interprets this jurisdictional power as having removed him from state prison jurisdiction. It did not. Once defendant was delivered into custody of the Department of Corrections and Rehabilitation, he remained under the physical jurisdiction of the Director of Corrections as a postsentence prisoner, "even while temporarily confined in local custody to attend the resentencing hearing." (*Johnson*, *supra*, 32 Cal.4th at p. 263; *Buckhalter*, *supra*, 26 Cal.4th at pp. 36, 40-41.)

Further, we do not agree with the suggestion inherent in defendant's argument that the trial court's jurisdictional authority to revisit an entire sentence renders a sentence void *ab initio*. Indeed, the California Supreme Court has extended the reasoning of *Buckhalter* to defendants whose entire convictions have been reversed on appeal, holding that the status of such a defendant remains that of a postsentence prisoner who is not entitled to presence custody credits. (*In re Martinez*, *supra*, 30 Cal.4th at p. 31.) The court also rejected a claim that a sentence recall voided the initial sentence and reinstated defendant's presence status. (*Johnson*, *supra*, 32 Cal.4th at pp. 263, 265-266.)

Our high court has also extended the reasoning of *Buckhalter* beyond the issue of custody credits, holding that the reversal of a sentence and remand for resentencing does not permit a defendant to enter a peremptory challenge to the sentencing judge as permitted by former Code of Civil Procedure section 170.6, subdivision (2), upon reversal of a final judgment. (*Peracchi*, *supra*, 30 Cal.4th at pp. 1249, 1254-1256.) The *Buckhalter* reasoning is equally persuasive for purposes of section 1170, subdivision (h). Thus, once a defendant is sentenced, committed to prison, and delivered to the custody of the Department of Corrections and Rehabilitation, he remains in that status until lawfully released. (See *Buckhalter*, *supra*, 26 Cal.4th at pp. 36, 40-41.) Defendant's postsentence status was thus maintained throughout the resentencing process. (See *Johnson*, *supra*, 32 Cal.4th at pp. 265-266.)

We conclude that vacating an entire sentence due to its invalidity as to one count does not render the original sentence void *ab initio*; nor does it reinstate the presentence status of a defendant. We construe the words, "sentenced on or after October 1, 2011," in section 1170, subdivision (h)(6), to exclude the resentencing of felons such as defendant whose sentences were imposed and executed prior to that date. The trial court did not err in refusing to resentence defendant under the Realignment Act.

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
CHAVEZ

We concur:

_____, P. J.
BOREN

_____, J.
ASHMANN-GERST