Filed 2/26/24  P. v. Singh CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAWN MARIE SINGH,<br><br>    Defendant and Appellant. | F085252<br><br>(Super. Ct. No. F09904296)<br><br>**OPINION** |

THE COURT[*]

APPEAL from a judgment of the Superior Court of  County.  John F. Vogt, Judge.

Janice M. Lagerlof, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Jeffrey D. Firestone, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Hill, P. J., Levy, J. and Meehan, J.

In 2020, following remand in *Singh I*,[1] defendant Dawn Marie Singh's two murder convictions were vacated pursuant to former Penal Code section 1170.95,[2] and she was resentenced to an aggregate term of eight years, which was by then exceeded by credit for time served. The trial court neither ordered victim restitution nor reserved the issue. (§ 1202.4, subd. (f).) Two years later, the trial court issued an order directing defendant to pay victim restitution in the amount of $7,576.82 for funeral and burial expenses, and denied her subsequent motion to vacate the order.

Defendant timely appealed on the ground that her actions were not a proximate cause of the victims' deaths. We provided the parties with the opportunity to file supplemental briefing on the issue of whether, two years postsentencing, the trial court had jurisdiction to enter the restitution order. We conclude that under the circumstances in this case, the trial court lacked jurisdiction to issue the 2022 restitution order. Therefore, we vacate the order.

## PROCEDURAL BACKGROUND

### I.     *Singh I*

In July 2009, defendant and coparticipants Neko Wilson, Christopher Butler, Andrew Jones, Jose Reyes and Leroy Johnson joined in a plan, masterminded by Wilson, to steal cash and marijuana from the victims' residence.[3] Defendant was the getaway driver and she waited outside the residence in her car with Butler and Jones while Reyes and Johnson entered to commit the theft. Wilson was nearby in another vehicle. There was no evidence of intent to harm the victims, but Johnson killed them while he was inside the house with Reyes. Defendant, Butler, Jones and Johnson were apprehended

---

[1]     *People v. Singh* (Nov. 8, 2019, F074785) [nonpub. opn.] (*Singh I*).

[2]     All further statutory references are to the Penal Code unless otherwise specified. Former section 1170.95 was renumbered to section 1172.6, effective June 30, 2022. (Assem. Bill No. 200 (2021–2022 Reg. Sess.).) We shall refer to the statute under its current number.

[3]     We rely on our factual summary in *Singh I*.

2.

shortly thereafter following a vehicle pursuit, and Wilson and Reyes were arrested days later.

In 2016, defendant was tried by jury and convicted of two counts of first degree felony murder (§§ 187, subd. (a), 189, subd. (a)) and one felony count of evading a peace officer with willful or wanton disregard for safety (Veh. Code, § 2800.2, subd. (a)).  On both murder counts, the jury found the robbery-murder and burglary-murder special circumstances allegations true under section 190.2, subdivision (a)(17)(A) and (G), and, in a bifurcated proceeding, defendant admitted suffering three prior convictions for purposes of prior prison term enhancements under section 667.5, subdivision (b).

The trial court sentenced defendant to the upper term of three years for evading a peace officer with an additional three years for three prior prison term enhancements, for a total determinate term of six years.  For the special-circumstances murders, the court sentenced defendant to two consecutive terms of life in prison without the possibility of parole (LWOP).

In *Singh I*, defendant claimed that the jury's special-circumstances findings were unsupported by substantial evidence, and that the trial court's error in instructing the jury on possession of stolen property as evidence of a crime (CALCRIM No. 376) resulted in prejudice as to the jury's special-circumstances findings.  Defendant also claimed that as to her admission of the prior conviction allegations, the court failed to advise her of her constitutional rights.  In supplemental briefing, she claimed that she was entitled to reversal of her first degree felony murder convictions under Senate Bill No. 1437,[4] effective January 1, 2019, and, if we did not agree the special-circumstances findings were unsupported by substantial evidence, that her LWOP sentence constituted cruel and unusual punishment in light of Senate Bill 1437.

---

[4]     Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437)).

The People disputed defendant's entitlement to relief on her substantial evidence claim or from her felony murder convictions under Senate Bill 1437. They conceded the trial court erred in instructing the jury with CALCRIM No. 376, but contended the error was harmless, and they conceded defendant was entitled to reversal of the prior prison term enhancements because she was not advised of her rights prior to admitting the allegations.

We concluded in *Singh I* that under *Banks* and *Clark*, "although defendant was a willing and committed participant in Wilson's scheme to steal from the victims, her role was confined to that of the classic getaway driver. Moreover, as a matter of law, participation in an armed robbery, alone, does not demonstrate reckless indifference to human life." (*Singh I, supra*, F074785, citing *People v. Banks* (2015) 61 Cal.4th 788, 808 & *People v. Clark* (2016) 63 Cal.4th 522, 618.) Therefore, the jury's robbery-murder and burglary-murder special circumstances findings were unsupported by substantial evidence that defendant was a major participant in the underlying felony and that she acted with reckless indifference to human life, and we reversed the findings, which rendered defendant's instructional error claim and her constitutional challenge to her LWOP sentence moot. We also reversed the trial court's findings on the prior conviction allegations because the record did not demonstrate that defendant was advised of her constitutional rights prior to admitting the allegations. Finally, we concluded that with respect to defendant's first degree felony murder convictions, relief under Senate Bill 1437 must be sought in the trial court in the first instance through the petition process set forth in section 1172.6. Except as modified, we affirmed the judgment.

## II. Proceedings on Remand

On remand, defendant filed a petition under section 1172.6. In May 2020, the trial court granted relief, vacated defendant's murder convictions, and resentenced her for two

counts of robbery (§ 211), resulting in an aggregate determinate term of eight years.[5]  The court noted that defendant's credit for time served exceeded the eight-year sentence and, therefore, she had credit for the sentence imposed.  The court did not order victim restitution or reserve the issue.  (§ 1202.4, subd. (f).)

More than two years later, in June 2022, the trial court issued an order reflecting that defendant was convicted of a crime in 2016 entitling the victims to restitution; codefendants Wilson, Butler, Jones, Reyes, and Johnson were jointly and severally liable; and defendant was required to reimburse the California Victim Compensation Board $7,576.82 for funeral and burial expenses.  In October 2022, defendant filed a motion to vacate the restitution order.  After the People filed an opposition, the court denied the motion during a hearing held in November 2022.  Defendant filed a timely notice of appeal following that proceeding.

## DISCUSSION

### I.    Legal Principles

As summarized, in May 2020, when the trial court found defendant eligible for relief under section 1172.6, vacated her murder convictions, recalled her sentence, and resentenced her for robbery, the court did not order victim restitution or reserve the issue. (§§ 1202.4, subd. (f), 1202.46.)  More than two years later, long after defendant was released from prison and judgment was final, the court issued a written order requiring her to pay restitution for funeral and burial expenses based on her 2016 conviction, raising the question whether the court had jurisdiction to issue that order.

"""When courts use the phrase 'lack of jurisdiction,' they are usually referring to one of two different concepts, although … the distinction between them is 'hazy.'""" (*Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 339, quoting *People v. Lara*

---

[5]     The trial court imposed the upper term of six years for robbery on count 1 and a consecutive term of one year four months for the robbery on count 2, and a consecutive term of eight months for evading a peace officer on count 3.

5.

(2010) 48 Cal.4th 216, 224.) "A court lacks jurisdiction in a fundamental sense when it has no authority at all over the subject matter or the parties, or when it lacks any power to hear or determine the case. (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288.) If a court lacks such "'fundamental'" jurisdiction, its ruling is void. (*People v. Lara* (2010) 48 Cal.4th 216, 225.) A claim based on a lack of fundamental jurisdiction may be raised for the first time on appeal. (*Ibid.*) [¶] Even when a court has fundamental jurisdiction, however, the Constitution, a statute, or relevant case law may constrain the court to act only in a particular manner, or subject to certain limitations." (*People v. Ford* (2015) 61 Cal.4th 282, 286–287.) "When a trial court has fundamental jurisdiction but fails to act in the manner prescribed, it is said to have acted 'in excess of its jurisdiction.' [Citation.] Because an ordinary act in excess of jurisdiction does not negate a court's fundamental jurisdiction to hear the matter altogether (2 Witkin, Cal. Procedure (5th ed. 2008) Jurisdiction, § 285, p. 891), such a ruling is treated as valid until set aside. (*People v. Tindall* (2000) 24 Cal.4th 767, 776, fn. 6.) A party may be precluded from seeking to set aside such a ruling because of waiver, estoppel, or the passage of time." (*Id.* at p. 287.)

Victims of crime have a right to restitution under the California Constitution, which provides, "Restitution shall be ordered from the convicted wrongdoer in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss." (Cal. Const., art. I, § 28, subd. (b)(13)(B).) "'To effect this constitutional requirement, the Legislature enacted section 1202.4, which requires the trial court to order a defendant to pay victim restitution "in an amount established by court order, based on the amount of loss claimed by the victim … or any other showing to the court." (§ 1202.4, subd. (f).)'" (*People v. Gomez* (2023) 97 Cal.App.5th 111, 115, quoting *People v. Lehman* (2016) 247 Cal.App.4th 795, 800.)

Section 1202.4, subdivision (f) provides, "Except as provided in subdivisions (p) and (q), in every case in which a victim has suffered economic loss as a result of the

defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. *If the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court*. The court shall order full restitution. The court may specify that funds confiscated at the time of the defendant's arrest, except for funds confiscated pursuant to Chapter 8 (commencing with Section 11469) of Division 10 of the Health and Safety Code, be applied to the restitution order if the funds are not exempt for spousal or child support or subject to any other legal exemption. [¶] … [¶]" (Italics added.)

Further, section 1202.46 provides, "Notwithstanding Section 1170, when the economic losses of a victim cannot be ascertained at the time of sentencing pursuant to subdivision (f) of Section 1202.4, the court shall retain jurisdiction over a person subject to a restitution order for purposes of imposing or modifying restitution until such time as the losses may be determined. This section does not prohibit a victim, the district attorney, or a court on its own motion from requesting correction, at any time, of a sentence when the sentence is invalid due to the omission of a restitution order or fine pursuant to Section 1202.4."

## II.     Analysis

The parties disagree whether the trial court had jurisdiction to order defendant to pay victim restitution two years after she was resentenced and released from prison, and in the absence of an order retaining jurisdiction over the issue. The People advance four grounds in support of their argument that the court had the jurisdiction to order victim restitution. First, the People argue that the trial court's original restitution order from 2016 remains in effect. Second, the trial court reserved future claims of restitution, as it may do under section 1202.4, subdivision (f). Third, the court had authority under section 1202.46 to correct defendant's sentence at any time and that the submission of a

7.

request for an order of restitution and an abstract of judgment implicitly sought correction of an unauthorized sentence. Finally, the right to restitution is enshrined in the California Constitution and the court's power to aid in the recovery of victim restitution does not end when the defendant's sentence is served.

The People's first argument ignores the nature of the relevant proceeding in this case following remand in *Singh I*. Under section 1172.6, defendant's murder convictions were vacated, her sentence was recalled, and she was resentenced "*in the same manner as if* [*she*] *had not previously been sentenced*, provided that the new sentence, if any, is not greater than the initial sentence." (*Id.*, subd. (d)(1), italics added.) The trial court did not refer back to any of its prior sentencing orders or incorporate them into its new sentencing pronouncement, and the People do not develop any argument or cite to any authority supporting a position that, through its silence, the court ordered victim restitution by reference to its earlier restitution order, or that the relevant proceeding was a partial resentencing limited in scope, understandably so given the relevant principles of law. (*Ibid.* [eligible petitioner to be resentenced as if not previously sentenced]; *People v. Leon* (2020) 8 Cal.5th 831, 855 ["The trial court is generally required to include all aspects of a judgment in its oral pronouncement of judgment."]; *People v. Valenzuela* (2019) 7 Cal.5th 415, 424–425 ["[T]he full resentencing rule allows a court to revisit all prior sentencing decisions when resentencing a defendant."]; *People v. Nilsson* (2015) 242 Cal.App.4th 1, 34 [remand for full resentencing includes "terms, fines, fees, and restitution"]; *People v. Rosas* (2010) 191 Cal.App.4th 107, 117 ["[T]he matter of the restitution and parole revocation fines is most assuredly not severable from the sentencing issues that were sent back to the trial court upon the first appeal."].)

The People's remaining arguments similarly lack force in the context of this case. The constitutional right to restitution is not self-executing (*People v. Giordano* (2007) 42 Cal.4th 644, 652), and we view the issue of restitution through the lens of sections 1202.4 and 1202.46. The court neither ordered restitution when it resentenced defendant in 2020

nor reserved restitution. (§ 1202.4, subd. (f).) Further, while section 1202.46 provides "This section does not prohibit a victim, the district attorney, or a court on its own motion from requesting correction, at any time, of a sentence when the sentence is invalid due to the omission of a restitution order or fine pursuant to Section 1202.4," there has been no showing that defendant's 2020 sentence was invalid because restitution was not ordered. Whatever the outcome might have been on defendant's merits challenge to causation, the order for burial and funeral expenses was premised on defendant's vacated 2016 murder convictions and the failure to award such expenses following defendant's 2020 convictions and sentencing for robbery is not facially invalid. The People fail to offer any persuasive argument that on the facts of this case, the trial court retained jurisdiction to order restitution in the first instance in 2022 over a defendant whose judgment was long final and who had long since been released from custody.[6]

We note that recently, in *McCune*, a probation case, the appellate court summarized that section 1202.4 addresses "the specific situation in which 'the amount of loss cannot be ascertained at the time of sentencing,' and it mandates that the restitution order 'shall include a provision that the amount shall be determined at the direction of the court.' (§ 1202.4, subd. (f).) When a court follows this process, section 1202.46 grants the court jurisdiction 'for purposes of imposing or modifying restitution until such time as the losses may be determined' (§ 1202.46), even if that occurs after probation has ended." (*People v. McCune* (2022) 81 Cal.App.5th 648, 655, review granted Oct. 26. 2022, S276303.) "The process in sections 1202.4 and 1202.46[, which applies to both probation and nonprobation cases,] puts a defendant on notice at the sentencing hearing that the court will issue a further restitution order once the victim's loss becomes more certain." (*Ibid.*) In *McCune*, the trial court ordered the defendant to pay restitution in an

---

[6]     Nor is this a case where estoppel is an arguable issue. (*People v. Ford, supra*, 61 Cal.4th at p. 287; *In re Bakke* (1986) 42 Cal.3d 84, 86.)

amount to be determined and later granted the probation department's petition to terminate probation in light of Assembly Bill No. 1950 (2019–2020 Reg. Sess.). (*McCune, supra*, at pp. 650–651.)  The petition provided that the defendant remained liable for victim restitution, which the trial court subsequently ordered.  (*Id.* at p. 651.) The appellate court affirmed the trial court (*id.* at p. 656), and the California Supreme Court has granted review to resolve the issue of whether the trial court exceeded its jurisdiction when it set victim restitution after probation was terminated.

In addition, we note there is some tension in the caselaw concerning the trial court's jurisdiction to correct an unauthorized sentence.  In *G.C.*, the California Supreme Court clarified that while "[a]n unauthorized sentence '"do[es] not become irremediable when a judgment of conviction becomes final, *even after affirmance on appeal*"'" (*In re G.C.* (2020) 8 Cal.5th 1119, 1130), "to invoke this rule the court must have jurisdiction over the judgement," and the unauthorized sentence doctrine will not remedy a jurisdictional defect (*ibid.*).  Subsequently, the Court of Appeal in *King*, relying on *G.C.*, concluded that "[t]he [unauthorized sentence] doctrine does not itself create jurisdiction for the trial court to rule on a motion challenging the legality of a sentence." (*People v. King* (2022) 77 Cal.App.5th 629, 637 (*King*).)

However, the appellate court in *Codinha II* disagreed with *King* and articulated the following rule:  "A trial court that imposes a sentence unauthorized by law retains jurisdiction (or has inherent power) to correct the sentence at any time the error comes to its attention, even if execution of the sentence has commenced or the judgment imposing the sentence has become final and correction requires imposition of a more severe sentence, provided the error is apparent from the face of the record." (*People v. Codinha* (2023) 92 Cal.App.5th 976, 990, fn. omitted (*Codinha II*).)  *Codinha II* did not purport to define the outer bounds of the rule, but judgment was not yet final when the unauthorized sentence at issue in *Codinha II* was brought to the trial court's attention and the defendant

was serving a prison sentence.[7] (*Codinha II, supra*, at pp. 982–983.) King, too, was still serving his prison sentence when, more than 30 years after sentencing, he brought a motion to correct his sentence. (*King, supra*, 77 Cal.App.5th at p. 633.)

Finally, in *Moreno*, this court held that "notwithstanding a trial court's failure to retain jurisdiction to impose or modify a restitution order, the second part of section 1202.46 permits the prosecutor, *at any time*, to request correction of a sentence that is *invalid* because, as in the present case, the court at the initial sentencing had neither ordered restitution nor found 'compelling and extraordinary reasons' for ordering less than full restitution." (*People v. Moreno* (2003) 108 Cal.App.4th 1, 10.) This court noted that "[a]n invalid or unauthorized sentence is subject to correction whenever it comes to the court's attention." (*Ibid.*) However, the defendant in *Moreno* was convicted of first degree murder and the restitution at issue was for burial expenses. (*Id.* at pp. 3–4.) Under those circumstances, this court concluded the failure to award any restitution resulted in an invalid sentence. (*Id.* at pp. 10–11.) Thus, not only did *Moreno* involve a sentence deemed invalid, but judgment was not final when the probation department sought the order of restitution and the defendant remained in custody. (*Id.* at p. 4.)

In this case, as stated, the trial court did not order or reserve jurisdiction over victim restitution when it resentenced defendant in 2020 nor was defendant's sentence facially invalid. At the time of sentencing, defendant's credits for time served exceeded her sentence and judgment subsequently became final. Accordingly, we conclude the trial court had no jurisdiction to order defendant to pay restitution for burial and funeral expenses in the first instance more than two years later, and we vacate the restitution order.

---

[7]   Remittitur in *Codinha I* issued on February 25, 2022. (*People v. Codinha* (2021) 71 Cal.App.5th 1047; Evid. Code, § 452, subd. (d).)

## DISPOSITION

The trial court's restitution order of June 6, 2022, is vacated for lack of jurisdiction.