Filed 11/6/24  P. v. Coilton CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>MELVIN GEORGE COILTON,<br><br>    Defendant and Appellant. | C100124<br><br>(Super. Ct. Nos. STK-CR-FE-1997-0005979, SC061624A) |

A jury found defendant Melvin George Coilton guilty of four robberies, one attempted robbery, one burglary, and one rape.  The trial court sentenced him to 209 years eight months to life in state prison.  After the court struck 14 one-year enhancements (Pen. Code, § 667.5, subd. (b))[1] from defendant's sentence pursuant to section 1172.75, it declined to reduce the sentence further, finding that "at this time the

---

[1]  Further undesignated statutory references are to the Penal Code.

1

Court is not satisfied that [defendant] no longer poses a danger to public safety." On appeal, defendant originally argued that the court abused its discretion in making that finding.

We requested and received supplemental briefing from both parties on the question of whether the trial court abused its discretion in failing to consider the effect of the requested reduction of the sentence from 195 to 150 years in prison. (See § 1385, subd. (c)(2) [" 'Endanger public safety' " means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others]; *People v. Gonzalez* (2024) 103 Cal.App.5th 215, 220, 230-231 [finding abuse of discretion due to application of the incorrect legal standard where the trial court failed to consider the date on which the defendant could be released if the enhancement had been dismissed and the fact that the release would be subject to a review by the Board of Parole Hearings and the Governor] (*Gonzalez*).) Upon consideration of the additional briefing, we agree with defendant that the trial court applied the wrong legal standard, and we cannot properly find the error harmless. Accordingly, we will reverse the sentence and remand the matter for resentencing.

BACKGROUND

The information charged defendant with five counts of robbery, one count of attempted robbery, one count of burglary, one count of rape, and one count of attempted murder. (§§ 211, 664/211, 459, 261, subd. (a)(2), 664/187.) It also alleged defendant used a firearm in each count. (§ 12022.5, subd. (a).) The information further charged defendant had two prior convictions for serious felonies, and three prior prison terms. (§§ 1170.12, 667, subd. (d), 667, subd. (a), and 667.5, subd. (b).)

We incorporate by reference the relevant facts from our prior unpublished opinion. (*People v. Coilton* (June 1, 2000, C028952) [nonpub. opn].)

2

The victims were staying in a room at a local motel. Late in the evening, two of the victims stepped outside of the room and three men approached them with one of the men pulling out a gun. The men pushed the victims back into their room. The men ordered the victims to lie on the floor and to give them their valuables. When two of the victims did not move quickly enough, they were struck with a gun. One of the men placed his gun in one of the victim's vaginas, and defendant ordered that victim into the bathroom where he raped her. (*People v. Coilton*, *supra*, C028952.)

After the men completed the robberies and rape at the motel, they dropped off one of their members and the remaining two men attempted to rob a gas station cashier. When confronted by an armed security guard, defendant shot the guard in the chest. (*People v. Coilton*, *supra*, C028952.)

Defendant gave his wife a ring he had stolen from the rape victim, and officers found the handgun used in the gas station robbery in his wife's car. (*People v. Coilton*, *supra*, C028952.)

Defendant's cellmate testified defendant admitted to shooting the security guard and claimed defendant boasted if he knew the guard had a bulletproof vest, he would have shot him in the head. (*People v. Coilton*, *supra*, C028952.)

The jury found defendant guilty on each of the counts (except one robbery) and found the firearm enhancements true. The trial court found the remaining enhancements true.

In 1998, the trial court sentenced defendant to 209 years eight months to life in state prison. That sentence included 12 one-year terms for the enhancements under section 667.5, subdivision (b), plus two stayed terms. Defendant's sentence also included 12 five-year terms for enhancements under section 667, subdivision (a), plus two stayed terms, and 12 separate enhancements pursuant to section 12022.5, plus two stayed terms.

3

In 2022, the trial court issued an ex parte order stating it had sentenced defendant to enhancements under section 667.5, subdivision (b). The court appointed a public defender for defendant and set the matter for a hearing.

In response, defendant filed a motion to recall his sentence for resentencing. (§§ 1172.75, 1385.) Defendant pointed to his age, the time he had served in prison, his diminished physical condition, his rehabilitation efforts, and his prison disciplinary record, as evidence his continued incarceration was no longer in the interest of justice. He contended section 1385, subdivision (c)(2) provided the court with authority to dismiss enhancements and the trial court should afford great weight to mitigating circumstances as required by that section. Specifically, defendant invoked the mitigating circumstances that he was sentenced pursuant to multiple enhancements and the enhancements resulted in a sentence of over 20 years. (§ 1385, subd. (c)(2)(B) & (c)(2)(C).)

In this vein, defendant argued the court could strike his section 667.5, subdivision (b) priors to reduce his sentence to 195 years eight months to life (which is ultimately what the court did). Alternatively, defendant suggested the trial court could strike all of the separate determinate enhancement terms under section 1385, subdivision (c) leading to an aggregate sentence of 159 years to life, or the trial court could sentence him to 25 years to life on each count leading to an aggregate sentence of 150 years to life.

In a separate section of his brief, defendant also pointed to section 1385, subdivision (c)(2)(A), which allows the trial court to give great weight to mitigating circumstances that the application of enhancements would result in discriminatory racial impact as described in section 745, subdivision (a)(4), under the California Racial Justice Act.[2] In support of his claim for the application of the California Racial Justice Act,

---

[2] At his December 2023 sentencing hearing, this section was not yet effective as it became applicable to defendant in January 2024. (§ 745, subd. (j)(3).)

4

defendant presented statistics showing that black persons were disproportionately sentenced on section 667, subdivision (a) enhancements between 2016 and the date of the hearing.

The prosecution opposed defendant's request. It highlighted defendant had several prior misdemeanor and felony convictions, including two burglaries, transportation of controlled substances, an escape, and destruction of jail or prison property. The prosecution further noted defendant was on parole when he committed the current offenses, and while he was incarcerated, defendant incurred 14 incident reports for rule violations between 2016 and 2022. These rule violations included fighting, battery, disrespect/behavior that could lead to violence, possession of contraband, disobeying orders, failure to respond to notices, failure to meet program/work expectations, delaying a peace officer in the performance of duties, and unlawfully being under the influence. The probation report also disclosed defendant was the subject of 29 incident reports while he was in the county jail.

In arguing none of the firearm enhancements (§ 12022.53, subd. (b)) should be dismissed, the prosecution concluded with, "Despite [d]efendant's incarceration, he has continued to disobey the law, he has exerted violence against his fellow inmates by engaging in fights and carrying a deadly weapon while incarcerated. Defendant, at the time he was sentenced, clearly posed a risk to public safety. Defendant's risk to public safety has not changed and dismissing the section 12022.53(b) enhancement would present an immediate danger to public safety because striking any of his 12022.53(b) enhancements would accelerate the possibility of this violent [d]efendant to get out sooner than intended and that poses a real danger to public safely. If [d]efendant's prior record and current prison commitment are any indications of his pattern, then the Court can conclude the Defendant will not obey the law, he will reoffend and, he is likely to graduate to a more serious crime if he is ever given a chance to be released to the public. Therefore, this Court should not strike these enhancements."

5

At the hearing, the trial court, struck all of defendant's enhancements under section 667.5, subdivision (a), including the two stayed enhancements, but declined to resentence defendant in any other respect. This reduced his sentence from 208 years eight months to life in prison to 195 years eight months to life in prison. The court stated: "[Defendant], in the People's estimation, poses an ongoing danger to public safety, and for that reason, they argue that the resentencing should not occur other than the 667.5(b) enhancements. And they indicate, one -- and the argument is predicated on the conduct that is alleged in the various circumstances that led to [defendant] being sentenced to 209 years to life and his disciplinary record, and they do acknowledge that there's been change and an evolution in [defendant] to some extent at the prison. [¶] However, their argument is that that in and of itself does not change the fact of the alleged crimes here and the ongoing concern for public safety and that basic argument has, in their estimation, leads the Court or -- their argument to the Court is that the Court should not resentence him in light of that ongoing danger to public safety." The trial court continued, "Fundamentally the question is whether or not the Court will then otherwise engage in resentencing of [defendant] in a more substantive way. And after careful review of the record of the filings of each party, I am not going to make any other changes with regards to [defendant's] sentencing. And the reason for this is . . . summarized in the People's moving papers, and I've reached the same conclusion based on my review of the record related to [defendant] and that at this time the Court is not satisfied that Defendant no longer poses a danger to public safety."

Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant originally claimed the trial court abused its discretion in finding he is currently a danger to society. In his supplemental brief, he argues the trial court prejudicially abused its discretion by considering only defendant's current dangerousness.

6

The People agree the trial court erred but argue lack of prejudice given the "totality of the sentencing court's rationale."

Our Supreme Court has recently clarified the framework within which a trial court must review requests to strike enhancements in this situation, as well as the proper analysis for assessing the harmlessness of an error where a trial court fails to properly exercise its discretion. (See *People v. Walker* (2024) 16 Cal.5th 1024, 1033-1035 [interpreting section 1385, subdivision (c)(2)]; *People v. Salazar* (2023) 15 Cal.5th 416, 425 [explaining requirements of harmless error analysis under similar circumstances].) These clarifications leave defendant with the better argument, as we next explain.

Under section 1172.75, subdivision (c), when a trial court reviews the judgment and verifies the current judgment includes a sentencing enhancement under section 667.5, subdivision (b), it is required to recall the sentence and resentence the defendant.

Any subsequent resentence "shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety." (§ 1172.75, subd. (d)(1).) The court is also required to "apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (*Id*., subd. (d)(2).) "By its plain terms, section 1172.75 requires a full resentencing, not merely that the trial court strike the newly "invalid" enhancements." (*People v. Monroe* (2022) 85 Cal.App.5th 393, 402.)

We review a trial court's decision whether to strike or reduce an enhancement under section 1385 for abuse of discretion. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298.) " ' "[T]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be

7

set aside on review." ' " (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377.) But " 'an abuse of discretion arises if the trial court based its decision on impermissible factors . . . or on an incorrect legal standard.' " (*Gonzalez, supra,* 103 Cal.App.5th at p. 225.)

Section 1385, subdivision (c)(1) states: "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so." Under section 1385, subdivision (c)(2), "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."

As we have already noted, the three relevant mitigating factors defendant identified were (1) Application of the enhancement would result in a discriminatory racial impact as described in section 745; (2) Multiple enhancements are alleged in a single case; and (3) The application of an enhancement could result in a sentence of over 20 years. (§ 1385, subd. (c)(2)(A)-(C).) As at least two of these three factors are undisputably present here,[3] we continue to the analysis the trial court was required to apply in deciding whether to dismiss any or all of these enhancements.

---

[3] In light of our conclusion that the trial court abused its discretion by applying an incorrect legal standard in determining whether to alter defendant's sentence, *post*, we express no opinion as to whether defendant has made a prima facie showing the California Racial Justice Act applies here. (§§ 1385, subd. (c)(2)(A), 745, subd. (a)(4)(A); but see *Mosby v. Superior Court* (2024) 99 Cal.App.5th 106, 130 [a prima facie showing requires the petitioner to demonstrate petitioner was similarly situated and engaged in similar conduct with other nonminority defendants, and that there was racial disparity in how minorities and nonminority defendants are treated].)

Section 1385, subdivision (c)(2), "does not require the trial court to consider any particular factors in determining whether 'there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.' " (*People v. Mendoza*, *supra*, 88 Cal.App.5th at p. 299.)  In *Mendoza*, the trial court examined the nature of the armed home invasion robbery the defendant committed during which he discharged his weapon and determined that dismissal of the defendant's enhancement would result in a sentence of less than six years in state prison and reduction of his sentence posed a likelihood defendant would commit a crime that would result in danger to others.  (*Ibid.*)  The trial court explained defendant " 'is a serious threat to society and a relatively long prison sentence is necessary to protect the public and keep the defendant away from the public and to provide time for the defendant to become rehabilitated.' " (*Id.* at p. 293.)  On appeal, the appellate court affirmed this ruling and concluded the trial court's finding the dismissal of the enhancement would endanger public safety was not so irrational or arbitrary that no reasonable person could agree with it.  (*Id.* at p. 299.)

A finding defendant is presently a danger to society, however, does not end the required inquiry.  Before it can decline to give great weight to the mitigating circumstances relevant here, the trial court was required to examine whether the defendant would present a danger to society *on the future date he might be released* if the trial court struck enhancements from his sentence.  (*Gonzalez*, *supra*, 103 Cal.App.5th at pp. 230-231.)  Its failure to do so here was an abuse of discretion.  (*Ibid.*)

In *Gonzalez,* the defendant was sentenced to 75 years to life for murder, which included an enhancement of 25 years to life in state prison for a firearm enhancement. (*Gonzalez*, *supra*, 103 Cal.App.5th at pp. 219-220.)  The trial court declined to dismiss the enhancement finding defendant was a present danger to society, but without examining his dangerousness in the future when he might be ultimately released from prison.  (*Id.* at p. 224.)  The appellate court concluded the trial court abused its discretion

9

because it merely examined whether the defendant was currently a danger to the public, but the statute required the trial court to consider the date on which the defendant could be released if the enhancement had been dismissed and the fact that the release would be subject to a review by the Board of Parole Hearings and the Governor. (*Id.* at pp. 230-231.) As explained in *Gonzales*, "Although the current dangerousness of the defendant is an appropriate factor to consider, as it will have some bearing on whether dismissing the enhancement would endanger the public, a crucial part of the inquiry is how the dismissal of the enhancement will impact the length of the defendant's sentence. A currently dangerous defendant who will be released from prison within a short time frame might be found by the trial court to pose a greater danger to the public than a defendant who is currently dangerous but who has no prospect of release from prison until he is elderly." (*Id.* at p. 228.)

Here, the trial court found "at this time the Court is not satisfied that [defendant] no longer poses a danger to public safety." To the extent it made this finding as to defendant's current dangerousness, we do not detect an abuse of discretion. The record demonstrates, however, that the court did not consider and made no findings as to whether defendant would be a danger to society if it dismissed enhancements that reduced defendant's sentence from 195 years to life to 150 years in prison (or 159 years based on the alternative argument). As *Gonzalez* instructs and the People concede, the court abused its discretion in failing to consider this future dangerousness.

We turn to assessing the impact of the trial court's error here. In *People v. Salazar, supra*, 15 Cal.5th at page 425, our Supreme Court elucidated the applicable standard for assessing whether a trial court's application of the erroneous legal standard resulted in prejudice to defendant. Our Supreme Court noted that " ' "[d]efendants are entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court." ' " (*Id.*, at p. 425.) If the trial court fails to exercise this informed discretion, we must " 'remand for resentencing unless the record "clearly indicate[s]" that

10

the trial court would have reached the same conclusion "even if it had been aware that it had such discretion." ' " (*Ibid.*)  Here, we cannot conclude the trial court would have reached the same conclusion because the court did not examine defendant's potential for *future* dangerousness presented by striking the enhancements at issue, including consideration of the date on which the defendant could be released if the enhancements were dismissed.  (See *Gonzalez, supra,* 103 Cal.App.5th at pp. 230-231.)  The trial court was required to reach a supported conclusion that defendant would remain a danger to the public if his potential sentence was reduced from 195 years to life to 150 years to life in prison due to the requested dismissals of enhancements, and the court did not do so here.[4]

On remand, while conducting a full resentencing that includes reconsideration of *all* aspects of defendant's sentence as permitted by law, if the trial court can find defendant would still be a danger in light of the enhancement dismissals sought by defendant, it need not consider or give "great weight" to the mitigating factors raised by defendant.  If, however, the court cannot determine the dismissal of those enhancements will endanger public safety at that future date, then, it must give great weight to these factors in determining whether it should dismiss any of the enhancements under section 1385.

We note our Supreme Court has just clarified what the "great weight" analysis requires.  If, on remand, the trial "court does not find that dismissal [of one or more of the enhancements] would endanger public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may

---

[4] At oral argument, defendant's appellate counsel suggested that this analysis should be applied to any and all decisions made by the trial court regarding imposition of the new sentence.  Although defendant is entitled to a full resentencing on remand, this particular analysis under section 1385 applies only to the trial court's consideration of requests to dismiss *enhancements*.

11

nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*People v. Walker, supra,* 16 Cal.5th at p. 1038.) As that determination was not before the trial court, we express no opinion on this issue and leave the ultimate resolution of this sentence to the court's informed discretion.[5]

DISPOSITION

The sentence is reversed and the matter is remanded for resentencing.


/s/<br>Duarte, Acting P. J.


We concur:


/s/<br>Krause, J.


/s/<br>Mesiwala, J.

------

[5] The parties agree that the trial court failed to recalculate defendant's custody credits upon the issuance of its instant order. Regardless of the court's ultimate determination on remand, it must do so. Pursuant to section 2900.1, "when a sentence is modified while in progress, the 'time' already served 'shall be credited upon any subsequent sentence [the defendant] may receive upon a new commitment for the same criminal act or acts.' " (*People v. Buckhalter* (2001) 26 Cal.4th 20, 37.) This requires the trial court to update the actual custody credits on the amended abstract of judgment to reflect "all actual days" spent in custody "whether in jail or prison" up until the resentencing. (*Ibid*.; italics omitted.)